## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KARL LEE MYERS,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 07-CV-00131-JHP-TLW** |
| ) | |
| **RANDALL WORKMAN,[1] Warden,** ) | |
| **Oklahoma State Penitentiary,** ) | |
| ) | |
| **Respondent.** ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner, Karl Lee Myers, is an Oklahoma

death row prisoner following convictions on two counts of first degree murder. Myers appears

through counsel in this action, challenging his conviction and sentence in Rogers County District

Court, Case No. CF-96-233, for the 1993 murder of Shawn Williams[2] (Dkt. ## 15, 23). Respondent

filed a response (Dkt. # 28) to the amended petition, and Myers filed a reply (Dkt. # 42) to the

response. The state court record has been produced.[3] The Court considered all of these materials in

reaching its decision. As a preliminary matter, the Court finds that because the amended petition

---

[1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the **Court Clerk** shall be
directed to substitute Randall Workman for Marty Sirmons as the party respondent.

[2]    Myers was charged with two counts of First Degree Murder in Rogers County District Court
Case No. CF-96-233. Pursuant to Myers' request, the two counts were severed for trial. He
was also convicted and sentenced to death on the second count for the murder of Cindy
Marzano. Habeas relief related to that count was denied in Northern District of Oklahoma,
Case No. 02-CV-140-GKF-PJC.

[3]    References to documents and pleadings shall be referred to by docket number and docketed
page (rather than the page as numbered by the party), where feasible (Dkt. # __); references
to trial transcripts shall be referred to as "Tr. Trans. Vol. __ at __." The original state court
record shall be identified as "O.R. Vol. __ at __."

replaces and supersedes the original petition, the original petition shall be declared moot. For the reasons discussed below, the Court concludes the amended petition (Dkt. # 23) should be denied.

## BACKGROUND

### I.      Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. In considering the issues presented in the amended petition, the Court relied upon the following synopsis from the Oklahoma Court of Criminal Appeals (OCCA) in that court's direct appeal opinion. Following review of the record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds this summary by the OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own.[4]

> On April 16, 1993, Shawn Williams's body was discovered at Rocky Point on the Port of Catoosa. Forensic examination of her body showed five gunshot wounds; a fatal gunshot wound to her chest ruptured her aorta and caused her death. Williams had other injuries, including abrasions to her chest and abdomen, a laceration on the back of her head, contusion and laceration to her left ear, abrasions to her knees, to her right hip and to her left buttocks. The laceration to the back of her head was consistent with falling and striking her head on the ground; the contusion over her left ear was consistent with being struck by an object. Sperm found in Williams's vagina suggested she was sexually assaulted before she died. DNA testing on the sperm linked Myers to the murder. Myers later confessed to the crime to an inmate in the county jail and also bragged about disposing of Williams's body to another witness prior to his arrest.

Myers v. Oklahoma, 133 P.3d 312, 320 (Okla. Crim. App. 2006) (internal footnote omitted) (hereinafter Myers II).

_____

[4]      Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the Court's analysis.

## II.    Procedural History

On August 23, 1996, Myers was charged by Information with two counts of first degree murder for the deaths of Shawn Williams (Count I) and Cindy Marzano (Count II), one count of first degree rape, and one count of robbery by force or fear in Rogers County District Court Case No. CF-96-233. See O.R. Vol. I at 1. On January 16, 1997, the District Attorney filed a Second Amended Information dropping the rape and robbery counts. In addition, a Bill of Particulars was filed, identifying certain aggravating circumstances in support of the State's request for the death penalty. Id. at 74-78. The trial court severed the two remaining counts, granting Myers' request for separate trials on the murder charges.  O.R. Vol. III at 412. The State elected to proceed first with the trial on Count II for the murder of Cindy Marzano. Following a jury trial held between February 23, 1998, and March 18, 1998, Myers was convicted of first degree murder for the death of Cindy Marzano. The jury found the existence of four aggravating circumstances, and the trial court sentenced Myers to death in accordance with the jury's recommendation. O.R. Vol. IV at 574, 601. Joe P. Robertson and William Higgins, attorneys with the Oklahoma Indigent Defense System (OIDS) represented Myers at the first trial. On December 8, 2000, the OCCA affirmed Myers' conviction and death sentence on Count II. Myers v. State, 17 P.3d 1021 (Okla. Crim. App. 2000) (*overruled in part* by James v. State, 152 P.3d 255 (Okla. Crim. App. 2007), insofar as the holding created a "greater latitude" rule in sexual assault cases) (hereinafter Myers I).

The second trial began on January 25, 2000. The jury found Myers guilty of the first degree felony murder of Shawn Williams on February 14, 2000. O.R. Vol. VII at 1286. At the conclusion of the sentencing stage, Myers' jury recommended a death sentence after finding the existence of four aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; (2) the

murder was committed by a person previously convicted of a felony involving the use or threat of violence to the person; (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. Id. at 1325-26. On March 7, 2000, in accordance with the jury's recommendation, the trial court sentenced Myers to death on Count I for the murder of Shawn Williams. Id. at 1360. OIDS attorney David Autry represented Myers during the second trial.

Represented by OIDS attorneys Lee Ann Jones Peters and Emma Victoria Rolls, Myers filed a direct appeal of his conviction and sentence for Count I in OCCA Case No. D-2000-271. He raised the following twenty-one (21) propositions of error:

| | |
|---|---|
| Proposition I: | The trial court erred in allowing Sidney Byrd[5] to testify after a hearing established his testimony was unreliable. |
| Proposition II: | Hearsay testimony bolstering Byrd's testimony was improperly admitted where the foundational requirements for allowing prior consistent statements had not been met. |
| Proposition III: | The identification of Karl Myers by Patricia Curry, as well as her testimony concerning a conversation, violated Mr. Myers' right to due process guaranteed by the Fourteenth Amendment. |
| Proposition IV: | The court erred in allowing Detective Elkin to give third party extrajudicial testimony regarding a photographic lineup. |
| Proposition V: | The trial court violated Mr. Myers' Sixth and Fourteenth Amendment rights by preventing him from presenting relevant evidence to rebut the State's case. |
| Proposition VI: | Rulings that allowed the State to improperly bolster one expert with another and prevented Mr. Myers from confronting and fully cross- |

---

[5] The spelling of Mr. Byrd's name is inconsistent in the record. In some places, his first name is spelled "Sidney," while in other places it is spelled "Sydney."

examining witnesses violated Mr. Myers' rights under the Sixth and Fourteenth Amendments to the Federal Constitution and Article II, §§ 7 and 20 of the State Constitution.

Proposition VII: Mr. Myers' statutory rights were violated when the State elicited improper opinion testimony from Dr. Ronald Distefano.

Proposition VIII: The trial court erred in allowing the State to introduce evidence of other crimes and in refusing to grant a mistrial when references to other crimes were made in violation of the court's ruling.

Proposition IX: Prosecutorial misconduct relating to the State's burden of proof and to the defendant's presumption of innocence deprived Mr. Myers of a fair trial.

Proposition X: The trial court erred in issuing an instruction at the close of the first stage of trial that could have been interpreted as directing a verdict in favor of the State.

Proposition XI: The trial court abused its discretion by refusing to remove prospective juror Stewart for cause.

Proposition XII: Presenting evidence that Mr. Myers confessed to a crime under a promise of immunity violated Mr. Myers' constitutional rights.

Proposition XIII: Mr. Myers' jury was misinstructed on the "especially heinous, atrocious, or cruel" aggravating circumstance in violation of his Eighth and Fourteenth Amendment rights.

Proposition XIV: The evidence is insufficient to prove beyond a reasonable doubt that the murder was especially heinous, atrocious, or cruel.

Proposition XV: The court's refusal to give the requested instruction on mitigation improperly conveyed the judge's personal opinion and deprived Mr. Myers of a fair penalty determination.

Proposition XVI: Mr. Myers' death sentence should be vacated because the execution of the mentally retarded and the neurologically damaged constitutes cruel and unusual punishment.

Proposition XVII: Mr. Myers' death sentence must be vacated because three of the aggravating circumstances found by the jury are unconstitutionally vague and overly broad as construed by this court, in violation of the

<table>
<tr><td>Proposition XVIII:</td><td>The prejudicial impact of evidence regarding the Marzano homicide outweighed any probative value and should have been excluded.</td></tr>
</table>

Eighth and Fourteenth Amendments to the United States Constitution, and Article II, §§ 7 and 9 of the Oklahoma Constitution.

Proposition XVIII:    The prejudicial impact of evidence regarding the Marzano homicide outweighed any probative value and should have been excluded.

Proposition XIX:    The introduction of unadjudicated acts in the penalty phase violated Mr. Myers' constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Federal Constitution and under Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition XX:    Mr. Myers was denied his Sixth Amendment right to effective assistance of counsel.

Proposition XXI:    The accumulation of error in this case deprived Mr. Myers of due process of law and a reliable sentencing proceeding in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

See Brief of Appellant in OCCA Case No. D-2000-271. On April 4, 2006, the OCCA found Proposition XIV meritorious because the evidence was insufficient to support the heinous, atrocious or cruel (HAC) aggravating circumstance. Myers II, 133 P.3d at 331-32. Nonetheless, after reweighing the remaining three aggravating circumstances with the mitigating circumstances, the state appellate court affirmed Myers' conviction and death sentence. Id. at 339. The United States Supreme Court denied Myers' subsequent petition for writ of certiorari on January 8, 2007. Myers v. Oklahoma, 549 U.S. 1120 (2007)

Myers' first application for post-conviction relief challenging the Williams murder conviction was filed on June 25, 2002, together with an application for an evidentiary hearing, in OCCA Case No. PCD-2002-258. Represented by OIDS attorneys Bryan Dupler and Dora Roberts, he presented the following three (3) grounds for relief (including a mental retardation claim based on the 2002 Supreme Court case Atkins v. Virginia, 536 U.S. 304 (2002)):

| | |
|---|---|
| Proposition I: | Trial and appellate counsel's failure to adequately develop and present available mitigating evidence of Mr. Myers' harmful exposure to lead and other toxic heavy metals deprived Mr. Myers of effective assistance of counsel. Mr. Myers should be granted an evidentiary hearing to fully develop the mitigating evidence and demonstrate the prejudice arising from prior counsel's deficient performance. The death sentence should be vacated and remanded for a new sentencing trial or modified to a non-capital sentence. |
| Proposition II: | Mr. Myers' state and federal constitutional rights to jury trial were violated by the failure to instruct the jury that it must find the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. Because the weighing determination is a factual determination which authorizes the sentencer to increase punishment for murder above the statutory maximum, the Oklahoma Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution require that this determination be made by a jury and must be proved beyond a reasonable doubt. Counsel's failure to raise this claim in prior proceedings also violated Mr. Myers' right to effective assistance of counsel. |
| Proposition III: | Mr. Myers raised a claim on direct appeal that his low intelligence, mental disabilities, and organic brain damage rendered his execution cruel and unusual. In light of the Supreme Court's recent ruling [Atkins] that executions of the mentally retarded are cruel and unusual punishment, this case should be remanded for an evidentiary hearing to determine whether Mr. Myers' mental disabilities bar his execution. |

See Original Application for Post-Conviction Relief in OCCA Case No. PCD-2002-258. All requested relief was denied on September 18, 2006, in an unpublished opinion. See Order Denying Original Application for Post-Conviction Relief and Motion for Evidentiary Hearing, Dkt. # 23, attachment 1.

On June 11, 2008, after he filed his amended petition in this Court but before the Respondent filed his response, Myers filed a second application for post-conviction relief in OCCA Case No. PCD-2008-570. Represented by attorney Steven Presson, he raised the following five (5) propositions of error:

| | |
|---|---|
| Proposition I: | Trial counsel's failure at the guilt-innocence stage to assert the defense to rape that the victim was already deceased deprived Mr. Myers of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition II: | Trial counsel's failure at mitigation to select and present an appropriate and qualified mental health expert deprived Mr. Myers of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition III: | Appellate counsel's failure to raise on direct appeal the claims of ineffective assistance of counsel presented in propositions one and two deprived Mr. Myers of his constitutional right to the effective assistance of appellate counsel under the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition IV: | Mr. Myers' original post-conviction counsel was ineffective. |
| Proposition V: | The cumulative impact of errors in this case requires relief. |

See Second Application for Post-Conviction Relief, OCCA Case No. PCD-2008-570. The OCCA denied Myers' request for relief in an unpublished opinion filed August 1, 2008. See Opinion Denying Second Application for Post-Conviction Relief and Request for an Evidentiary Hearing in OCCA Case No. PCD-2008-570.

Myers initiated this federal habeas action on March 2, 2007, by filing an application to proceed in forma pauperis (Dkt. # 2), and a request for appointment of counsel (Dkt. # 3). His amended petition, filed on March 28, 2008, identifies the following twenty-three (23) grounds for relief:

| | |
|---|---|
| Ground One: | Mr. Myers is mentally retarded. Therefore, his sentence violates the Eighth and Fourteenth Amendments as recognized in Atkins v. Virginia. |
| Ground Two: | The procedures employed by the State to determine mental retardation were constitutionally inadequate to safeguard Mr. Myers' rights under Atkins v. Virginia and for this reason produced an inaccurate determination. |

**Ground Three:** Mr. Myers' mental retardation trial counsel performed ineffectively in violation of his constitutional rights.

**Ground Four:** Mr. Myers was denied the effective assistance of criminal trial counsel in violation of his rights under the Sixth and Fourteenth Amendments.

**Ground Five:** The opinion testimony of Dr. Distefano offered by the State denied Mr. Myers his right to a fair trial as guaranteed by the Eighth and Fourteenth Amendments as well as his rights under the Confrontation Clause as guaranteed by the Sixth and Fourteenth Amendments.

**Ground Six:** The State failed to present sufficient evidence to prove beyond a reasonable doubt that Shawn Williams was raped such that Mr. Myers' conviction violated the Fifth, Sixth, Eighth, and Fourteenth Amendments.

**Ground Seven:** All factual findings essential to the jury's authority to impose the death penalty were not made beyond a reasonable doubt as required by the Sixth, Eighth, and Fourteenth Amendments; appellate counsel's failure to raise this issue as error on appeal constituted ineffectiveness of counsel in violation of Mr. Myers' Sixth and Fourteenth Amendment rights.

**Ground Eight:** The OCCA's improper appellate reweighing of aggravators against mitigators violated Mr. Myers' rights under the Sixth, Eighth, and Fourteenth Amendments.

**Ground Nine:** The trial court erred in allowing Sidney Byrd to testify after a hearing established his testimony was unreliable in violation of Mr. Myers' Eighth and Fourteenth Amendment rights.

**Ground Ten:** Admission of Chief Criminal Investigator Elkin's hearsay testimony bolstering jailhouse informant Sydney Byrd's testimony violated Mr. Myers' Sixth Amendment Right of Confrontation and Fourteenth Amendment Right to Due Process.

**Ground Eleven:** The trial court erred in admitting Patricia Curry's impermissibly suggestive identification of Mr. Myers.

**Ground Twelve:** Admission of Chief Criminal Investigator Elkin's hearsay testimony to bolster Ms. Curry's identification testimony violated Mr. Myers' constitutional right to Due Process under the Fourteenth Amendment.

| | |
|---|---|
| Ground Thirteen: | The trial court violated Mr. Myers' Sixth and Fourteenth Amendment rights by preventing him from presenting a defense. |
| Ground Fourteen: | The trial court erred by allowing the State to improperly bolster one expert with another, preventing Mr. Myers from confronting and effectively cross-examining witnesses, in violation of his Sixth and Fourteenth Amendment rights. |
| Ground Fifteen: | The improper admission of other crimes evidence rendered Mr. Myers' trial fundamentally unfair, thereby violating his rights under the Fifth and Fourteenth Amendments. |
| Ground Sixteen: | The admission of Mr. Myers' involuntary confession to another crime as evidence of an aggravating circumstance was not harmless beyond a reasonable doubt and thus violated his rights under the Fifth, Eighth, and Fourteenth Amendments. |
| Ground Seventeen: | The improper admission of unadjudicated acts in the penalty phase violated Mr. Myers' Fifth, Sixth, Eighth, and Fourteenth Amendment rights. |
| Ground Eighteen: | Prosecutorial misconduct violated Mr. Myers' rights under the Fifth, Sixth, and Fourteenth Amendments. |
| Ground Nineteen: | The trial court's failure to excuse a prospective juror for cause, thereby requiring Mr. Myers to use a peremptory challenge to cure the error, denied Mr. Myers his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. |
| Ground Twenty: | Prior to first stage deliberations Mr. Myers' jurors were instructed they had sworn to find Mr. Myers guilty. This denied Mr. Myers' right to trial by a fair and impartial jury and his right to due process in violation of the Sixth and Fourteenth Amendments. |
| Ground Twenty-one: | Two aggravating circumstances found by the jury in support of Mr. Myers' death sentence are vague and overly broad, in violation of the Eighth and Fourteenth Amendments. |
| Ground Twenty-two: | The trial court's instructions to the jury regarding Mr. Myers' mitigating evidence prevented the jury from considering all the evidence in derogation of the Eighth and Fourteenth Amendments. |

Ground Twenty-three: The cumulative effect of errors at both phases of the trial deprived Mr. Myers of his constitutional rights under the Eighth and Fourteenth Amendments.

See Dkt. # 23.

## GENERAL CONSIDERATIONS

### I.     Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity"). The exhaustion doctrine "is principally designed to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982).

In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal. Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion. Coleman, 501 U.S. at 735 n.1 (citations omitted). Also, the Court has the discretion to ignore the exhaustion requirement altogether and deny the petition on the merits if the claim lacks merit. Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009) (listing four options available to the district court faced with a

mixed petition); 28 U.S.C. § 2254(b)(2). Respondent contends that some of Myers' claims are unexhausted. Therefore, the Court will address the threshold question of exhaustion as it arises in each ground.

## II.    Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground. Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000). A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998). If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright, 433 U.S. at 91. The "cause" standard requires Myers to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, or interference by state officials. Id. He must also show "'actual prejudice' resulting from the errors

of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). Alternatively, the "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 495 (1991). He must make "a colorable showing of factual innocence" to utilize this exception. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000). It is intended for those rare situations "where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).

III.    **Standard of Review - AEDPA**

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007). Under AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. Alverson v. Workman, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing Snow, 474 F.3d at 696). When a state court has adjudicated the merits of a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established[6] Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1)(2); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

The first step in applying § 2254(d)(1) standards is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the

---

[6]     A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002). Further, the Supreme Court has recently held that "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, --U.S.--, 131 S.Ct. 1388, 1398 (2011). Thus, "evidence introduced in federal court has no bearing on §2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court." Id. at 1400 (footnote omitted).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, -- U.S. --, 130 S.Ct. 841, 849 (2010) (citing Williams, 529 U.S. at 410). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Myers' habeas proceedings in the instant matter commenced well after the effective date of AEDPA. Although the crime for which Myers was convicted predates the law's enactment, the provisions of AEDPA govern pursuant to <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). Therefore, to the extent Myers' claims are cognizable in this federal habeas corpus proceeding and not procedurally barred, those claims shall be reviewed pursuant to § 2254(d).

## **GROUNDS FOR RELIEF**

### I.     **Mental retardation issues (grounds 1, 2, 3)**

On June 20, 2002, while the <u>Myers II</u> appeal was pending but after <u>Myers I</u> had been decided, the Supreme Court issued its opinion in <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002). In <u>Atkins</u>, the Supreme Court found that executions of mentally retarded criminals constitute cruel and unusual punishment prohibited by the Eighth Amendment. <u>Id.</u> at 321. The opinion left to the states the task of developing appropriate ways to determine when a person claiming mental retardation would fall within <u>Atkins'</u> scope. In accordance with the <u>Atkins</u> mandate, the State of Oklahoma established criteria for the evaluation of mental retardation to be used in capital trials where the defendant claims he is not death penalty eligible due to mental retardation. <u>Murphy v. State</u>, 54 P.3d 556, 567-68 (Okla. Crim. App. 2002), *overruled in part in* <u>Blonner v. State</u>, 127 P.3d 1135, 1139 (Okla. Crim. App. 2006).[7] The OCCA also adopted procedures to be used for determining whether a

---

[7]     In <u>Murphy</u>, the State of Oklahoma adopted the following definition of mental retardation for individuals who allege they are not death penalty eligible:

A person is "mentally retarded": (1) If he or she functions at a significantly sub-average intellectual level that substantially limits his or her ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others; (2) The mental retardation manifested itself before the age of eighteen (18); and (3) The mental retardation is accompanied by significant limitations in adaptive

defendant is mentally retarded for purposes of prohibiting a death sentence. <u>Lambert v. State</u>, 71 P.3d 30, 31-32 (Okla. Crim. App. 2003).

Following the <u>Atkins</u> decision, appellate counsel representing Myers in both the Marzano and Williams cases promptly sought relief from the OCCA, claiming Myers is mentally retarded and ineligible for the death penalty. Significant to grounds 1, 2, and 3 in the instant habeas case, the OCCA allowed Myers to litigate the mental retardation issue in the Marzano matter and remanded the issue to the state district court for a jury trial. The OCCA rejected Myers' request to consolidate the Marzano and Williams cases for purposes of determining whether Myers is mentally retarded. Thus, no specific determination of mental retardation was made in the Williams matter. Upon conclusion of a jury trial in Rogers County District Court, the jury determined in the Marzano matter that Myers was not mentally retarded. Myers appealed the decision, but the OCCA denied relief. <u>See</u> <u>Myers v. State</u>, 130 P.3d 262 (Okla. Crim. App. 2005) (hereinafter <u>Myers MR</u>).

### A.      Myers' mental retardation claim (ground 1)

In ground one, Myers claims his death sentence must be vacated because he is mentally retarded. He presents a lengthy argument with supporting affidavits and evidence to defend his claim that he falls within the definition of mental retardation and cannot be executed under the mandates of <u>Atkins</u>. <u>See</u> Dkt. # 23 at 53-94. This Court's review, however, is limited by AEDPA. The Court's

---

functioning in at least two of the following skill areas: communication; self-care; social/interpersonal skills; home living; self-direction; academics; health and safety; use of community resources; and work.

<u>Blonner</u>, 127 P.3d at 1139 (citing <u>Murphy</u>).

role in habeas matters "is not that of factfinder." <u>Duckett v. Mullin</u>, 306 F.3d 982, 1002 n.12 (10th Cir. 2002).

Myers' ground one issue was presented to the OCCA and rejected. Accordingly, the Court may grant federal habeas corpus relief only if the state decision was contrary to, or involved an unreasonable application of clearly established Supreme Court law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254 (d)(1)(2). Rejecting Myers' claim of mental retardation on direct appeal in <u>Myers II</u>, the OCCA found as follows:

> In Proposition Sixteen, Myers argues his death sentence should be vacated because the execution of the mentally retarded and the neurologically damaged constitutes cruel and unusual punishment. Executions of mentally retarded criminals constitute "cruel and unusual punishments" and are prohibited by the Eighth Amendment. *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The Court in *Atkins* left it to the individual States to define mental retardation and to develop appropriate procedures to enforce this constitutional restriction. *Atkins,* 536 U.S. at 317, 122 S.Ct. at 2250.

> Following *Atkins,* in *Murphy v. State,* 2002 OK CR 32, ¶ 31, 54 P.3d 556, 567-568, *modified in State, ex. rel Lane v. Bass,* 2004 OK CR 14, 87 P.3d 629, 631-632, we set forth a definition of mental retardation to be used in capital trials where an individual claims he or she is not death penalty eligible due to mental retardation. For capital purposes, a mentally retarded person is one with significantly limited ability to intellectually and adaptively function in certain enumerated areas, who has at least one IQ test score of seventy (70) or below, and in whom the retardation manifested itself before the age of eighteen (18). *Id.*

> At trial, Dr. Philip Murphy testified Myers's full scale I.Q. score was seventy-seven (77); his verbal score was seventy (70), which is in the mild mental retardation range and his performance I.Q. score was eighty-six (86) which falls within the dull average range. Dr. Murphy concluded Myers fell in a borderline range of between normal functioning and mentally retarded functioning. Myers also is dyslexic, suffers from aphasia, and exhibits indicators of organic brain damage.

> On appeal, appellate counsel filed a Notice of Extra-Record Evidence Supporting Appellant's Proposition of Error Regarding Execution of the Mentally Retarded. Attached thereto are exhibits containing school records that show Myers's

mental and emotional status dating back to September of 1954. These records were not admitted in the trial of this matter, and Myers requests this Court allow the materials to be supplemented to the appeal record under Rule 3.11(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2001).

Before filing this appeal, Myers appealed his conviction and death sentence imposed for the murder of Cindy Marzano, and we affirmed his conviction and sentence of death. *Myers I,* 17 P.3d 1021, 2000 OK CR 25. We denied his Original Application for Post-Conviction Relief relating to that conviction. *Myers v. State,* PCD 2000-516 (Okl.Cr. February 6, 2001) (not for publication).

While this appeal was pending and after the Supreme Court decided *Atkins,* Myers filed a subsequent application for post-conviction relief relating to the Marzano case and *Myers I.* In this subsequent application, Myers raised an *Atkins* claim and argued he could not be executed due to mental retardation. We denied the subsequent application in part, but remanded the matter to the District Court of Rogers County for an evidentiary hearing on Myers's claim of mental retardation. *See Myers v. State,* PCD 2002-978, (Okl.Cr. August 1, 2003) (not for publication). Following an evidentiary hearing, a jury trial was held on Myers's claim of mental retardation. The jury returned with a verdict that Myers was not mentally retarded. This Court denied post-conviction relief after the mental retardation jury trial and found the record supported the jury's verdict that Myers is not mentally retarded. *Myers v. State,* 2005 OK CR 22, ¶ 8, 130 P.3d 262.

This Court previously denied requests of counsel to consolidate this appeal with PCD 2002-978 on November 5, 2003 and June 23, 2004. *See Myers v. State,* PCD 2002-978 and PCD 2002-258 (Okl.Cr. November 5, 2003) (not for publication) and *Myers v. State,* PCD 2002-978 (Okl.Cr. June 23, 2004) (not for publication). An additional remand for an evidentiary hearing and/or jury determination on Myers's claim of mental retardation in this appeal is not warranted because a jury has already determined Myers is not mentally retarded, and this Court has affirmed that verdict on appeal. *Smith v. State,* 2002 OK CR 2, ¶ 7, 46 P.3d 136, 137 (when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be relitigated between the same parties in any future lawsuit). Accordingly, no relief is warranted on Proposition Sixteen as the issue has previously been decided and the Motion to file Notice of Extra-Record Evidence Supporting Appellant's Proposition of Error Regarding Execution of the Mentally Retarded is therefore ***DENIED.*** A jury has determined Myers is not mentally retarded, and we affirmed that finding on appeal. *Myers,* 2005 OK CR 22, ¶ 11, 130 P.3d 262.

Myers II, 133 P.3d at 335-36. Respondent argues that the claim is procedurally barred because the

OCCA declined to address the merits on procedural grounds. See Dkt. # 38 at 42-45. The Court

disagrees. "A claim is procedurally barred when it has not been fairly presented to the state courts

for their initial consideration - not when the claim has been presented more than once." Cone v. Bell, -- U.S. --, 129 S.Ct. 1769, 1781 (2009).  The Supreme Court explained:

> When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review. In Ylst v. Nunnemaker, 501 U.S. 797, 804, n.3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), we observed in passing that when a state court declines to revisit a claim it has already adjudicated, the effect of the later decision upon the availability of federal habeas is "nil" because "a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default." When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication. See 28 U.S.C. § 2254(b)(1)(A) (permitting issuance of a writ of habeas corpus only after "the applicant has exhausted the remedies available in the courts of the State").

Id.  (footnote omitted).  Accordingly, the OCCA's rejection of Myers' mental retardation claim because it had been decided previously in the Marzano matter does not preclude this Court's review for procedural bar reasons.  However, this Court also has reviewed the mental retardation issue previously in the Marzano habeas corpus matter (Northern District of Oklahoma Case No.02-CV-140-GKF-PJC), and rejected Myers' challenges based on the mental retardation trial. Myers v. Workman, 2010 WL 2106456 (N.D. Okla. 2010) (slip copy) (hereinafter Myers I - HC). While the claim is not procedurally barred, the doctrine of collateral estoppel (issue preclusion) makes it unnecessary for this Court to address again Myers' claim that he should be exempt from execution because of mental retardation.

Citing Oklahoma law from Smith v. State, 46 P.3d 136, 137 (Okla. Crim. App. 2002), the OCCA found Myers' direct appeal request for an evidentiary hearing and/or a second jury determination on his mental retardation claim was not warranted "because a jury has already determined Myers is not mentally retarded, and this Court has affirmed that verdict on appeal."

Myers II, 133 P.3d at 336. The Smith case quoted Ashe v. Swenson, 397 U.S. 436, 442 (1970), for the collateral estoppel principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Smith, 46 P.3d at 137 (quoting Ashe, 397 U.S. at 442). Myers argues that the OCCA's reliance on Smith and Ashe is unreasonable because the cases do not "involve application of collateral estoppel *against* a criminal defendant." Dkt. # 23 at 89 (emphasis in original). Although he asserts that several circuit courts have held that collateral estoppel cannot be used against a criminal defendant, he cites no Supreme Court law for that proposition. In fact, the Tenth Circuit has recognized a split among the circuits, observing that "[t]he United States Supreme Court, however, has not addressed directly the question of whether collateral estoppel can be applied *against* the defendant in a criminal case." United States v. Gallardo-Mendez, 150 F.3d 1240, 1242 (10th Cir.1998) (emphasis in original). Habeas corpus relief is available to Myers on his mental retardation claim only if the OCCA's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See generally Maynard v. Boone, 468 F.3d 665 (10th Cir. 2006). In the matter before this Court, Myers has not demonstrated that the OCCA's decision finding his mental retardation claim barred by the doctrine of collateral estoppel was contrary to, or an unreasonable application of, Supreme Court law. Because there are no Supreme Court cases which give a clear answer to the question presented, let alone one in Myers' favor, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" Wright v. Van Patten, 552 U.S. 120, 126 (2008) (citing Carey v. Musladin, 549 U.S. 70, 77 (2006) (quoting 28 U.S.C. §

2254(d)(1))). Therefore, under the explicit terms of § 2254(d)(1), relief is unauthorized on Myers' ground one claim.

As a final argument, Myers claims that redundant litigation over the identical question of his mental retardation is justified in this case because his first trial was inadequate and unfair. Quoting Montana v. United States, 440 U.S. 147, 164 n.11 (1979), Myers contends that redetermination of his mental retardation claim is warranted because "there is reason to doubt the quality, extensiveness, or fairness of procedures followed in [the] prior litigation." Dkt. # 23 at 91. He argues that public policy and judicial efficiency are not sufficient reasons to apply collateral estoppel because his liberty is at stake. Id. at 90. However, in addition to relieving parties of the cost and vexation of multiple lawsuits and conserving judicial resources, the doctrine of collateral estoppel also encourages reliance on a prior adjudication to prevent inconsistent decisions. Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Montana, 440 U.S. at 153-54). Further, both the adequacy and fairness of the mental retardation trial held in connection with the Marzano murder were addressed by this Court in the habeas decision concerning the Marzano trial. See Myers I - HC. Myers has not demonstrated that he is entitled to habeas relief on his ground one claim.


**B.      Challenge to Oklahoma procedures following Atkins (ground 2)**

In ground two, Myers contends that Oklahoma's procedures developed pursuant to the Atkins mandate were constitutionally inadequate to safeguard his rights. Further, the procedures have not been regularly or consistently applied. Dkt. # 23 at 94. All of his references are to the trial transcript from the Marzano mental retardation trial. His challenges to the OCCA's decision are challenges to Myers I. In ground seventeen of his amended petition in the habeas case challenging

the Marzano conviction, Myers also challenged the constitutionality of Oklahoma's procedures utilized in resolving an Atkins mental retardation claim. See N.D. Okla., Case No. 02-CV-140-GKF-PJC, Dkt. # 56. The Court denied relief on the claim. Myers I - HC at *54. For the reasons discussed in subpart A above, the Court will not review an issue that has been decided previously in Myers I - HC.

### C.     Ineffective assistance of mental retardation counsel (ground 3)

Myers next claims that his counsel at the Marzano mental retardation trial and subsequent Myers II appeal provided ineffective assistance in violation of his constitutional rights. Respondent asserts that Myers' ground three claims were not presented to the state courts in Myers II, are unexhausted, and procedurally barred. Myers concedes that his ineffective assistance of mental retardation counsel claims were not raised in state court. See Dkt. # 42 at 23. Myers argues, however, that the claims should be addressed on the merits by this Court because he can demonstrate both cause and prejudice and that he has suffered a fundamental miscarriage of justice.

It is not necessary to resolve the exhaustion and procedural bar status of most of ground three because Myers' ineffective assistance of mental retardation trial and appellate counsel claims were analyzed and rejected by this Court in the habeas case addressing the Marzano trial. See Myers I - HC at *61-64. In that action Myers argued that his mental retardation trial attorney was overworked, had too little time to prepare, failed to investigate, failed to prepare properly for trial, and failed to present contemporary evidence of Myers' mental retardation as demonstrated by affidavits from fellow prisoners. Further, he alleged appellate counsel was ineffective for failing to raise these issues on appeal to the OCCA. This Court reviewed the merits of each claim and concluded Myers had not

shown that his mental retardation attorneys were constitutionally ineffective. Id. at *64. The Court will not revisit a claim already adjudicated in Myers I - HC.

To the extent Myers argues that his mental retardation trial counsel was ineffective for failing to object to Dr. Call as an expert witness and failing to impeach Dr. Call, that claim has never been presented to the state courts or to this Court in the Marzano habeas corpus matter. Thus, that portion of his ground three claim is unexhausted.

Myers' failure to present his ineffective assistance of mental retardation counsel claim to the OCCA insofar as it relates to Dr. Call's testimony would result in the imposition of a procedural bar based on independent and adequate state procedural grounds should Myers return to state court to raise such claim in a third application for post-conviction relief. See Cummings v. Sirmons, 506 F.3d 1211, 1223 (10th Cir. 2007) (citing Okla. Stat. tit. 22, §§ 1086, 1089(D)(2)). An "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." Anderson v. Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quoting Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002)). Although the Court could require Myers to return to state court to raise the unexhausted portion of his ground three claim in a third post-conviction application, the OCCA routinely applies a procedural bar[8] to such claims unless the petitioner

---

[8] Because of the fundamental importance of the Sixth Amendment right to counsel, the Tenth Circuit has stated that, to be adequate, a state procedural bar to federal habeas review of ineffective assistance of trial counsel claims must comply with the following imperative: "(1) allowing petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance and (2) providing a procedural mechanism whereby a petitioner can adequately develop the factual basis of this claims of ineffectiveness." English v. Cody, 146 F.3d 1261, 1263 (10th Cir. 1998). In Myers' case, there is no question that his mental retardation trial counsel and appellate counsel differed. Further, the cross-examination of Dr. Call was a matter of trial court record,

provides "sufficient reason" for his failure to raise the claim in an earlier proceeding. Okla. Stat. tit. 22, § 1086. Because this claim would be subject to a procedural bar in the state courts, the Court finds it would be futile to require Myers to exhaust the claim. See Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (the futility exception is a narrow one, and is supportable "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief"); see also Coleman, 501 U.S. at 735 n.1; Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). Accordingly, because exhaustion would be futile, the part of Myers' ground three claim relating to his counsel's treatment of Dr. Call's testimony is not barred by the exhaustion requirement.

Myers argues first that there "was no available state process by which [he] could have obtained merits review of his ineffective assistance of MR counsel claim." However, Myers raised other ineffective assistance of mental retardation counsel claims which this Court ultimately addressed on the merits in Myers I - HC. His claim that mental retardation counsel ineffectively handled Dr. Call's testimony could have been raised before the OCCA in the Marzano murder post-conviction proceedings, or in either of the two post-conviction proceedings related to the Williams murder. The Court is not convinced that he had no available state process to present the claim to the OCCA, thus preserving the issue for habeas corpus review.

Myers' only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v.

---

allowing appellate counsel to pursue the claim on appeal if he chose to do so. Therefore, Myers was able to adequately develop any factual basis for his claim surrounding the testimony of Dr. Call and a state procedural bar would be deemed adequate.

<u>Delo</u>, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" argument requires the petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991) (citing <u>Murray</u>, 477 U.S. at 485). Citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 345 (1992) as support, Myers argues that the fundamental miscarriage of justice exception also applies to his claim of a capital sentencing error. He contends he is "actually innocent" of a death sentence because he is mentally retarded and, thus, ineligible for the death penalty. <u>See</u> Dkt. # 42 at 29. Because the Court has not found constitutional error in his mental retardation trial, or in the jury's conclusion that Myers is not mentally retarded, the fundamental miscarriage of justice exception is inapplicable in his case. <u>Sawyer</u>, 505 U.S. at 347 (finding the "actual innocence" requirement in a capital punishment setting must focus on those elements that render a defendant eligible for the death penalty).

Accordingly, because Myers has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claim is not considered, the Court concludes that it is procedurally barred from considering the merits of his ineffective assistance of mental retardation counsel claim related to counsel's handling of Dr. Call's testimony.

## II.    Ineffective assistance of counsel (ground 4)

In ground four, Myers alleges constitutionally ineffective representation by his trial counsel, David Autry. He contends Mr. Autry: (1) failed to investigate, develop, and present a substantial body of mitigating evidence; (2) utilized an expert, Dr. Phillip Murphy, whose license to practice psychology was in probationary status for unethical conduct, and whose findings were both flawed and detrimental to Myers' case; (3) failed to present a defense to the felony murder charge by

challenging the underlying felony of rape; and (4) failed to adequately investigate available impeachment evidence concerning witness Sidney Byrd. Respondent responds that (1) and (4) were properly rejected on the merits in the OCCA's direct appeal opinion, but (2) and (3) were not raised until post-conviction proceedings and were denied on procedural grounds. The Court agrees that part of (1), and all of (4) were included in Myers' direct appeal. The remaining claims were either not raised until post-conviction proceedings, or never presented to the state court for consideration.

### A.     Ineffective assistance of counsel claims adjudicated on direct appeal

To be entitled to habeas corpus relief on a claim of ineffective assistance of counsel, Myers must demonstrate that the OCCA's adjudication of his claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. Humphreys v. Gibson, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Myers is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

In Proposition XX of his direct appeal, Myers presented a cursory claim consisting of only three sentences that his trial counsel was ineffective for failing to investigate and present evidence "so important to this case that the guilt and sentencing verdicts are unreliable." See Brief of Appellant in OCCA Case No. D-2000-271 at 100. He provided further argument and the factual basis for his claim in a contemporaneously filed request for an evidentiary hearing pursuant to Rule 3.11(B)(3)(b) of the Rules of the Oklahoma Court of Criminal Appeals. In the application for an evidentiary hearing, Myers alleged his trial counsel was ineffective for failing to investigate and present (1) evidence that could have been used to impeach witness Sidney Byrd, and (2) mitigation evidence including school records which would have corroborated the testimony of his mitigation witnesses. The OCCA denied relief and denied the request for an evidentiary hearing, noting the following:

> Myers argues his counsel's trial investigation was inadequate in two areas: impeachment evidence relating to Sydney Byrd and mitigation evidence. In support of his Application for Evidentiary Hearing, counsel for Myers has filed her own Affidavit and Affidavits of Kristin Brown, Barry Rouw, and John Struchtemeyer. (Exhibits 1-4, respectively).
>
> The Affidavits of Kristin Brown, and Barry Rouw suggest that Byrd was or could have been suffering from some psychiatric disorder and was or could have been

medicated at the time he claims Myers confessed to him. Further, appellate counsel argues his [sic] Byrd's prior criminal records would have revealed his propensity to distort reality or lie. Appellate counsel argues the Affidavits show a probability that trial counsel was ineffective for not obtaining and presenting evidence that would have severely undermined Byrd's credibility.

Appellate counsel also argues trial counsel's performance fell below objective standards because he did not obtain Myers's school records and use them as mitigation evidence. Counsel argues the school records would have confirmed Myers's sister's testimony about Myers's very bad childhood and would have also corroborated Dr. Murphy's testimony that Myers suffered from mental deficits. Counsel argues "[I]n sum, Mr. Myers' school records would have dispelled any doubts about the accuracy of the pictures painted by Ms. Robitaille and Dr. Murphy."

Myers II, 133 P.3d at 331. The OCCA then applied its Rule 3.11 evidentiary standard requiring "clear and convincing evidence" before deciding that Myers was not entitled to a hearing or to relief on his ineffective assistance of trial counsel claims. The state court concluded:

Here, the record shows trial counsel thoroughly and successfully attacked Byrd's credibility and exposed his motive to fabricate to the jury. Further, the evidence contained in the elementary school records which trial counsel did not discover or utilize was arguably cumulative to the testimony of Dr. Murphy and Appellant's sister.

Review of the Application and the supporting Affidavits show trial counsel certainly could have obtained and utilized this evidence for trial. However, it does not show by "clear and convincing evidence" a strong possibility that trial counsel was ineffective for failing to identify or utilize this evidence. Accordingly, we decline to grant the Application for Evidentiary Hearing and relief is denied on Proposition Twenty.

Id.  Although the OCCA correctly set out the Strickland standards, it appears that it reviewed the evidence proffered by Myers in terms of whether he had satisfied the standard in OCCA Rule 3.11. As a result, it is unclear whether the OCCA actually applied the Strickland standard and decided that it was not satisfied when it denied his request for an evidentiary hearing and denied relief on the ineffective assistance of counsel claim.

The Tenth Circuit has addressed the relationship between the Strickland standard and the Rule 3.11 standard, noting that "Rule 3.11's "clear and convincing evidence" standard is more demanding than Strickland's "preponderance of the evidence" standard; therefore, any decision based on the former standard would be contrary to clearly established federal law." Wilson v. Workman, 577 F.3d 1284, 1294 (10th Cir. 2009). The Circuit Court's explanation provides some insight, as follows:

> We recently addressed the relationship between the Strickland standard and the Rule 3.11 standard. Wilson v. Workman (Wilson II), 577 F.3d 1284, 1297, 2009 WL 2623336, at *11 (10th Cir.2009) (en banc) ("Rule 3.11's standard poses a lower substantive standard (the defendant need show only a 'strong possibility' of ineffectiveness) but a higher evidentiary standard...."). We concluded that the denial of a Rule 3.11 motion does not necessarily constitute a determination on the merits of the defendant's ineffectiveness claim. Id. at * 11, 1297.

However, the OCCA's decision may still be considered a decision on the merits, as explained further in the Wilson decision:

> While the OCCA's actual Strickland determination is not an adjudication on the merits when Rule 3.11 has barred consideration of material evidence, there is still the possibility that that denial of the evidentiary hearing itself constitutes an adjudication on the merits. The denial of an evidentiary hearing under Rule 3.11, after all, requires the OCCA to consider the non-record evidence that the defendant has proffered. If the standard that Rule 3.11 establishes for granting an evidentiary hearing either replicates or is lower than the constitutional standard, then the OCCA's denial of an evidentiary hearing would constitute an adjudication on the merits to which the federal courts owe deference.
>
> To succeed on a Strickland claim, the federal standard requires a petitioner "show, by a preponderance of the evidence, that (1) counsel's performance fell bellow an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." Young v. Sirmons, 486 F.3d 655, 680 (10th Cir. 2007). Rule 3.11, in contrast, grants an evidentiary hearing if the defendant shows "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Thus Rule 3.11's standard poses a lower substantive standard (the defendant need show only a "strong possibility" of ineffectiveness) but a higher evidentiary standard (the evidence must

be "clear and convincing" rather than simply a "preponderance"). "Although the interplay of these two standards-one more demanding, one less demanding than the federal-is not clear, we cannot conclude that when the state court denies an evidentiary hearing under Rule 3.11 it has necessarily decided that the federal standard was not satisfied." Wilson, 536 F.3d at 1081.

Wilson v. Workman, 577 F.3d 1284, 1297-99 (10th Cir. 2009). In Myers' case, the OCCA explicitly denied his ineffective assistance of counsel claims on the merits, but relied on language from both Strickland and from Rule 3.11. The OCCA has recently explained the interplay between Rule 3.11 and the Strickland standard, stating: "[W]hen we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we necessarily make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in Strickland." Simpson v. State of Oklahoma, 230 P.3d 888, 906 (Okla. Crim. App. 2010). The OCCA also confirmed that, in making a decision on whether to grant an evidentiary hearing under Rule 3.11, the rules require the court to thoroughly examine the non-record evidence in order to evaluate the request. Id. at 905. Thus, the Court concludes that the OCCA's rejection of Myers' ineffective assistance of counsel claims presented on direct appeal was an adjudication on the merits entitled to deference under AEDPA. Myers may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2).

In subpart one of ground four, Myers contends that his trial counsel failed to investigate, develop, and present a substantial body of mitigating evidence. In particular, he alleges that trial counsel made no effort to interview the men who had abused Mr. Myers, the teacher who had

ridiculed him, the children who had bullied him, or the doctors who had treated him after he was hit by a car. Dkt. # 23 at 132. He claims that counsel failed to discover extensive, available evidence regarding Myers' background including information about the car accident, family and school experiences, childhood medical and academic reports, Kansas prison and mental hospital experience and testing records, and anecdotal evidence from eight relatives and friends. Id. at 133. Further, counsel did not consult with any experts as to the psychological or emotional impact that the abuse, bullying, or hostile school environment had on Myers. Id. However, on direct appeal Myers only referenced counsel's failure to obtain school records which were "rife with mitigating evidence." See Application for Evidentiary Hearing in OCCA Case No. D-2000-271, at 2. Myers summarizes the details included in the school records which touch on some of the issues he enumerates in this habeas claim. However, with the exception of the school records and the details provided therein, the remaining particulars of subpart one are unexhausted as they were not presented to the state court as part of his ineffective assistance of trial counsel claim. If Myers were to return to state court to include those claims in a third post-conviction proceeding the OCCA would undoubtedly find them procedurally barred. That bar would be an "independent" state ground because state law provides "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. Next, as to the adequacy of the anticipatory procedural bar applicable to Myers' claims of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that a procedural bar imposed on a claim brought in a second application for post-conviction relief that could have been but was not raised in a previous application is adequate to bar habeas review of ineffective assistance of counsel claims. Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999) (citing Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998)). Thus, Myers' multiple defaults of his unexhausted claims of

ineffective assistance of trial counsel would result in imposition of a procedural bar adequate to preclude federal review.

Myers presents no explanation for the inclusion of additional claims in subpart one, nor does he provide a "cause and prejudice" or "fundamental miscarriage of justice" argument to excuse the procedural bar.[9] Accordingly, with the exception of failure to investigate, present and develop the school records evidence, the Court finds the remaining claims of ineffective assistance of counsel in subpart one are procedurally barred.

Regarding the school records, the OCCA acknowledged that "trial counsel certainly could have obtained and utilized this evidence for trial," but found that counsel's failure to do so was not constitutionally ineffective. The Court agrees. In Strickland, the Supreme Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." Strickland, 466 U.S. at 688. The additional information in Myers' school records is not so significant that, even assuming without deciding that Myers' trial counsel performed deficiently in failing to unearth and present the records, it was not unreasonable for the OCCA to conclude that Myers had

---

[9]     The Court notes that Myers presents a general argument near the end of his amended petition (Dkt. # 23 at 236-38) that appellate counsel was ineffective to the extent appellate counsel failed to raise any of the claims in his petition. Thus, he claims ineffective assistance of appellate counsel establishes both cause and prejudice to overcome any procedural bar. It is well established that in certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. Murray v. Carrier, 477 U.S. 478, 488-89 (1986). However, the ineffective assistance of appellate counsel claim must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489. Myers has not presented his ineffective assistance appellate counsel claims as detailed in subpart one to the state courts of Oklahoma as an independent claim. He has not satisfied this requirement to establish cause and excuse his procedural default.

failed to show a substantial likelihood of a different sentence. See Harrington v. Richter, -- U.S. --, 131 S.Ct. 770, 792 (2011) (noting the likelihood of a different result must be substantial, not just conceivable). This Court concludes that the OCCA's decision was not an unreasonable application of Strickland. Myers is not entitled to habeas relief on this portion of his ineffective assistance of trial counsel claim.

Likewise, the Court finds that Myers is not entitled to relief on his claims that trial counsel was ineffective for failing to adequately investigate available impeachment evidence concerning witness Sidney Byrd. Myers argues that trial counsel failed to investigate Byrd's documented mental health problems. Dkt. # 23 at 139. He states that Byrd's testimony was "severely damaging" to Myers' defense as it was the State's only evidence of Myers' confession. Id. at 138. First, the Court notes that it is unclear whether the documentary evidence of Byrd's mental health history would have been allowed into evidence for impeachment purposes. Myers states that the documents were proffered as exhibits during the Marzano murder trial, but were not admitted into evidence. See, e.g., Cummings v. Sirmons, 506 F.3d 1211, 1233 (10th Cir. 2007). More importantly, as the OCCA observed, "[T]he record shows trial counsel thoroughly and successfully attacked Byrd's credibility and exposed his motive to fabricate to the jury." The jury, as the trier of fact, made its own conclusion about the credibility of Byrd and about Myers' involvement in the murder of Shawn Williams. Through cross-examination, trial counsel succeeded in demonstrating that Byrd had a history of drug use, had numerous parole violations, had at least three prior felony convictions, and had been an informant for law enforcement. Defense counsel thoroughly and extensively cross-examined Byrd, attacking his credibility See Tr. Trans. Vol. VIII at 2278-2357.

Myers has failed to demonstrate that the OCCA's rejection of this issue on direct appeal was an unreasonable application of <u>Strickland</u>. Myers is not entitled to relief on his claim that his trial counsel was ineffective for failing to investigate and use mental health evidence for the purpose of impeaching witness Sydney Byrd.

### B. Procedurally barred ineffective assistance claims

Myers concedes, and the record confirms, that the issues claiming ineffective assistance of trial counsel for (1) failing to assert the defenses to the charge of rape that the victim may have been already deceased, or that the sexual encounter may have been consensual; and (2) failing to retain an appropriate mental health expert were not presented to the OCCA on direct appeal. These claims were raised for the first time in Myers' second post-conviction proceedings. In its opinion denying post-conviction relief, the OCCA stated that the claims were "capable of presentation in [Myers'] direct appeal and original application for post-conviction relief." Relying on Okla. Stat. tit. 22, § 1089, and finding that the claims were not based on newly discovered facts or on new controlling legal authority, the OCCA concluded they were procedurally barred. <u>See</u> Opinion Denying Second Application for Post-Conviction Relief and Request for Evidentiary Hearing in OCCA Case No. PCD-2008-570. Respondent contends that this Court should honor the state's procedural bar, unless Myers can demonstrate cause and prejudice for the procedural default, or that a fundamental miscarriage of justice will result if the Court fails to address the merits. Dkt. # 38 at 67.

This Court may not consider issues raised in a habeas petition "that have been defaulted in state court on an independent and adequate procedural ground [ ] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." <u>English v. Cody</u>, 146 F.3d 1257, 1259 (10th Cir. 1998). However, Myers does not attempt to clear the procedural bar hurdle

by arguing cause and prejudice.[10] He does claim a fundamental miscarriage of justice, arguing he is "actually innocent" of a death sentence because he is mentally retarded and, thus, ineligible for the death penalty. See Dkt. # 42 at 36-37. Because a jury has previously concluded that Myers is not mentally retarded, his fundamental miscarriage of justice argument fails.

Myers also argues that Respondent has failed to show that the OCCA's procedural bar was "independent and adequate." Tenth Circuit precedent forecloses this argument.

> The problem with this argument, however, is that it is clearly foreclosed by a series of recent Tenth Circuit cases affirming the adequacy of the Oklahoma procedural bar relating to claims not raised in an initial state petition for post-conviction review. *See* Thomas, 218 F.3d at 1221-22; Medlock, 200 F.3d at 1323; Smallwood, 191 F.3d at 1267-69; Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998). In particular, this court in Medlock cited to the relevant provision of the Oklahoma code, Okla. Stat. tit. 22, §§ 1086, 1089(D)(2), and held that "[d]espite the especially vigilant scrutiny we apply in examining procedural bars to ineffective assistance claims, we have held that Oklahoma's procedural bar to claims not raised on initial post-conviction review is independent and adequate." 200 F.3d at 1323.

Cannon v. Gibson, 259 F.3d 1253, 1266 (10th Cir. 2001). The Court concludes that Myers' ineffective assistance of counsel claims (subparts 2 and 3), raised for the first time in his second application for post-conviction are procedurally barred. He is not entitled to habeas corpus relief on those claims.

### III. Improper testimony of expert witness (ground 5)

---

[10]     Again, the Court notes that Myers provides a general argument at the end of his petition claiming ineffective assistance of appellate counsel as cause sufficient to excuse any procedurally defaulted claim. In this case, Myers did raise an ineffective assistance of appellate counsel claim as an independent issue in his second application for post-conviction relief (OCCA Case No. PCD-2008-570). However, the OCCA summarily denied all requests for relief in the second post-conviction matter on procedural bar grounds. Clearly, Myers could have raised the ineffective assistance of appellate counsel issue in his first post-conviction proceeding. Thus the resulting procedural bar is adequate to preclude federal review.

Next, Myers claims his constitutional rights were violated by the testimony of the medical examiner concerning the rape of Shawn Williams. First, he contends that his trial was rendered fundamentally unfair in violation of his rights to due process because Dr. Distefano, as an expert witness, provided opinion testimony without medical or scientific support. Second, he asserts that he was denied his right to confront witnesses when Dr. Distefano relied upon testimonial hearsay to conclude that the victim was raped and dragged. As to the first claim, Respondent asserts that Myers has failed to demonstrate that the OCCA's adjudication of the claim resulted in a decision that was contrary to, or an unreasonable application of, Supreme Court law. Respondent states that the second part of Myers' ground five claim is unexhausted, and subject to an anticipatory procedural bar.

## A. Opinion testimony

In this portion of ground five, Myers argues that Dr. Distefano's opinion testimony that Shawn Williams had been raped was improper and not based on scientific, technical, or specialized knowledge as required by <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999). <u>See</u> Dkt. # 23 at 149. Myers contends that the use of Dr. Distefano's testimony denied him a fair trial in violation of his due process rights guaranteed by the United States Constitution. <u>Id</u>. He claims that without the medical examiner's improper opinion, one or more jurors could have concluded that Myers and the victim had consensual sex, or that he had intercourse with the victim after she was deceased - which would not have been rape. <u>Id.</u> at 151. Respondent correctly notes that, in his state direct appeal proceedings, Myers focused on state law violations insofar as he challenged the testimony of Dr. Distefano. He failed to raise a federal due process claim, but now argues that the misapplication of state law

violated his due process rights under Hicks v. Oklahoma, 447 U.S. 343 (1980). Although his direct appeal argument in Proposition VII focused on alleged violations of state statutes and case law, Myers did mention federal law by claiming that Dr. Distefano's testimony did not comport with the requirements of Daubert. See Brief of Appellant in OCCA Case No. 2000-271 at 37. In its rejection of Proposition VII, the OCCA relied on Oklahoma evidentiary law. Myers II, 133 P.3d at 326. The OCCA stated:

> The State's evidence of rape was entirely circumstantial. Williams was missing for several days before her body was found. Her shorts were on backwards and her body bore signs of a struggle and signs of being dragged. Although gunshot wounds caused her death, the above circumstances, combined with seminal fluid found in her vagina, led the medical examiner to conclude she was likely involved in a sexual assault or raped prior to her death. To determine the cause and manner of death, Dr. Distefano testified he not only considers the results of autopsy and physical examination, but also considers information and other evidence obtained by his investigators. Dr. Distefano testified he believed his findings upon examination were consistent with a sexual assault/rape based "on really all of the circumstances" that he knew about the case.
>
> Dr. Distefano's testimony did not tell the jury what conclusion to reach. His testimony came with the caveat that it was his opinion based upon the circumstances. It was relevant to assist the jury in reaching a conclusion. 12 O.S.1991, §§ 2701, 2702. Further, defense counsel thoroughly cross-examined Dr. Distefano on his opinion that she was "probably raped." Through cross-examination, counsel established there was no physical evidence of forcible sexual intercourse, no vaginal injuries; the only physical evidence of intercourse was that sperm was deposited in her vagina within twenty-four hours of her death. Although Dr. Distefano opined that Williams was raped, the jury clearly could reach its own conclusion on this issue. The trial court did not err by allowing the medical examiner to testify to his opinion that Shawn Williams was raped and no error occurred which warrants relief.

Id. at 327.

As a general rule, petitioners must exhaust available state court remedies before seeking redress via a federal habeas corpus petition. See 28 U.S.C. § 2254(b)(1); Smallwood, 191 F.3d at 1267. In this case, Myers challenged on direct appeal the admission of the Dr. Distefano's testimony

concerning rape, but made no specific reference to a due process violation or the United States Constitution. Nevertheless, even if the federal claim is unexhausted, this Court may choose to deny relief on the merits pursuant to 28 U.S.C. § 2254(b)(2) rather than dismiss the petition or hold it in abeyance while Myers returns to state court to exhaust his claim. The theory behind addressing the merits is that even if a petitioner fails to exhaust an issue it might not be worth his time to exhaust in state court and then re-file the habeas petition if the claim is patently without merit. See Moore v. Schoeman, 288 F.3d 1231, 1235 (10th Cir. 2005). In this case, the Court finds that this part of Myers' fifth ground for relief should be denied on the merits, notwithstanding any question about exhaustion.

"In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir.1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted).

Thus, in Myers' ground five claim challenging the admission of portions of Dr. Distefano's testimony on due process grounds, he must demonstrate that the ruling rendered his trial fundamentally unfair. Myers specifically complains of the following portion of Dr. Distefano's direct examination:

> Q:     Doctor, let me ask the question this way, Based on everything that you observed, would this, what you observed, be consistent with a forcible sexual assault?

Tr. Trans. Vol. VI at 1592. Defense counsel objected, but the trial judge overruled the objection. Id.

Dr. Distefano responded, "Yes." The prosecutor continued:

> Q:     And what do you base that on?
>
> A:     Well, I base that on really all the circumstances that I know about this case. And I think if you look at this case in its entirety and you understand that a woman went missing, that her vehicle was found --

At this point defense counsel again objected and asked for a mistrial. The Court again overruled the

objection, and denied the request for a mistrial. Id. at 1593-94. The direct examination continued:

> Q:     I think I asked you earlier if -- I asked you the question if this would -- your observation would be consistent with a sexual assault occurring to Shawn Marie Williams and you answered, Yes. And then I asked you if you would tell the Ladies and Gentlemen of the Jury the basis for that?
>
> A:     Yes. The basis for that is a consideration of all the circumstances that I know. And as I mentioned at the very beginning of my testimony, the first step that I take in any death in trying to determine cause of [sic] manner [which] is [based on] the information that's known about it. That's just as important to me as the part where I examine the body. And so in the circumstances of this case, I think it is reasonable to include that in addition to the fact that she was the victim of a homicide that a rape was probably also a part of that.

Id. at 1594-95. Defense counsel objected to Dr. Distefano's response, and the trial judge overruled

the objection. Id. at 1595. The prosecutor continued:

> Q:     Do you have additional matters to add to that answer as factors that you considered?
>
> A:     Well, the factors that I considered were the circumstances that I was told about and this did include that a young woman went missing, that her vehicle was found out of gas, that her body was then found several days later. And through my examination, I saw that she was shot multiple times with respect to what caused her death. And then with finding the presence of the sperm and the many sperm with tails, as I mentioned, I think it's reasonable to conclude that there was a sexual component to the incident that happened that resulted in her death and I think that is what I would characterize as a rape/homicide.

Id. at 1595-96. Significantly, Dr. Distefano qualified his opinion with the following unsolicited

statement:

> Now, I say that it is my opinion that that is probably what happened. I am not saying that I know that with a degree of certainty like I give when I say with [sic] cause of death is. Because in the sense of me explaining that the cause of death is a gunshot wound to the chest, to me, that is a certainty. The other opinion that I have expressed is not in the same way certain but in my opinion probable.

Id. at 1596. Defense counsel began his cross examination of Dr. Distefano by following up on this

line of questioning:

> Q:  Doctor, you stated near the end of direct examination that in your opinion in connection with her homicide Ms. Williams was probably raped. Do you remember saying that?
>
> A:  Yes, I do.
>
> Q:  And you also amended that by stating that you could not say that with certainty like you could with the cause of death being the gunshot wound to the chest but just that based on all surrounding circumstances it was your belief that she was probably raped, right?
>
> A:  That's exactly right.
>
> Q:  You can't state with any certainty that she was raped contemporaneous with or during the criminal transaction which led to her murder by gunshot wounds, right?
>
> A:  That's right. I would say that there would be no way for me to determine that with certainty.
>
> . . .
>
> Q:  When you say "probably raped," that is as far as you can go is probability, right?
>
> A:  That's absolutely as far as I would believe I could state that.

Id. at 1602-03. As observed by the OCCA, "[t]hrough cross-examination, counsel established there

was no physical evidence of forcible sexual intercourse, no vaginal injuries; the only physical

evidence of intercourse was that sperm was deposited in her vagina within twenty-four hours of her death." Myers II, 133 P.3d at 327.

Under Oklahoma law "expert witnesses can suggest the inference which jurors should draw from the application of specialized knowledge of the facts." Romano v. State, 909 P.2d 92, 109 (Okla. Crim. App. 1995); see also Warner v. State, 144 P.3d 838, 860 (Okla. Crim. App. 2006) (quoting Romano). Further, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Okla. Stat. tit. 12, § 2704. Dr. Distefano explained why he inferred that the presence of sperm and situational facts led him to believe that the victim had been raped. Such testimony is not barred by Romano or Oklahoma statutes. "An expert may express an opinion based on factual evidence provided by others." Cannon v. Mullin, 383 F.3d 1152, 1162 (10th Cir. 2004) (citing Okla. Stat. tit. 12, § 2703). On cross examination, defense counsel elicited an admission from Dr. Distefano that his opinion did not mean, with scientific certainty, that the victim had been raped. The Court finds no constitutional error in the admission of Dr. Distefano's opinion testimony.

Finally, the Court notes that Myers' reliance on Daubert is misplaced. First, Daubert establishes guidelines for federal district courts to use in deciding whether new scientific or technical evidence should be admissible. Second, Daubert specifically addresses expert opinion testimony which might not necessarily be based on science, noting:

> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

Daubert, 509 U.S. at 592 (internal citations omitted). The Court concludes that admission of Dr. Distefano's testimony concerning the rape of Shawn Williams did not violate Myers' constitutional right to due process. Myers has failed to demonstrate how the admission of Dr. Distefano's testimony rendered his trial fundamentally unfair. He is not entitled to habeas relief on this part of his ground five claim.

**B.      Testimonial hearsay**

In the second part of Myers' ground five claim, he contends that his rights under the Confrontation Clause of the Sixth Amendment were violated because the "bulk of the information forming the basis of Dr. Distefano's opinions came from the testimonial hearsay statements of others, including his assistants and various law enforcement officers." Dkt. # 23 at 151-52. Respondent argues that Myers never presented this claim to the state courts. Thus, the claim is unexhausted and would be subject to a procedural bar if Myers were to return to state court to present the claim for consideration in a third post-conviction proceeding. Myers does not respond to the procedural bar argument related to this portion of ground five in his reply. The Court agrees that the claim is unexhausted and would be subject to a procedural bar if Myers presented it now to the OCCA.

This Court may not consider Myers' procedurally barred claim unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered.  See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997). However, Myers provides no argument in his reply supporting an exemption from procedural bar. Accordingly, because he has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claim is not considered,

the Court concludes that the defaulted claim regarding an alleged violation of the Confrontation Clause asserted in ground five is procedurally barred.[11]  Coleman, 510 U.S. at 724.  Myers is not entitled to habeas corpus relief on this portion of ground five.

## IV.    Insufficient evidence (ground 6)

In his sixth ground for habeas corpus relief, Myers claims his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated because the State failed to present sufficient evidence to prove that Shawn Williams was raped. He argues that, because there was no evidence Ms. Williams was raped, the felony murder conviction must fail. Respondent states that Myers' ground six claim is unexhausted and subject to an anticipatory procedural bar. Myers concedes that this claim was not presented as a "stand alone claim" to the OCCA. See Dkt. # 23 at 156. However, he contends that the claim was raised implicitly as part of his direct appeal claim regarding the insufficient evidence presented to support the HAC aggravator. Further, because the OCCA concluded there was insufficient evidence to prove the HAC aggravator, see Myers II, 133 P.3d at

---

[11]    The Court notes that even if this claim were not procedurally barred, Myers would not be entitled to relief.  Under Oklahoma law, experts may rely on hearsay information in reaching an opinion if the information is of a type reasonably relied upon by experts in forming their opinions. See Okla. Stat. tit. 12, § 2703 which specifically provides that "[i]f a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or date need not be admissible in evidence." See also Lewis v. State, 970 P.2d 1158, 1166-167 (Okla. Crim. App. 1998) (finding information reasonably relied upon by psychological experts such as hospital records and information imparted to him by the doctor and police officer was admissible in the psychologist's testimony). Further, the Tenth Circuit has noted that testimonial hearsay may be admitted for a purpose other than to establish the substantive truth of the hearsay, such as "when an expert witness testifies regarding the out-of-court development of facts or data on which she [or he] based her [or his] opinion." United States v. Pablo, 623 F.3d 1285, 1292 (10th Cir. 2010).

332, Myers argues that the decision implicitly acknowledged there was insufficient evidence to support rape.[12]

Explaining his position that the OCCA implicitly acknowledged there was insufficient evidence to prove rape, Myers directs the Court's attention to the following language in which the OCCA addressed the sufficiency of the HAC evidence:

> We cannot find this circumstantial evidence supports the jury's conclusion, beyond a reasonable doubt, that Williams' murder was preceded either by torture or serious physical abuse. The evidence does not prove Williams was conscious and aware of her attack or that she was conscious and alive suffering pain after the attack. It also does not prove she suffered extreme mental anguish in addition to that which of necessity accompanied the homicide.

Dkt. # 23 at 156, quoting Myers II, 133 P.3d at 332. He argues that if the evidence were insufficient to prove the HAC aggravating circumstance, then it was also insufficient to prove Shawn Williams was raped for purposes of the forcible rape underlying the felony murder conviction. However, in deciding the HAC issue, the OCCA focused on the consciousness of the victim. Under Oklahoma law, a rape can be committed even if the victim is unconscious. Okla. Stat. tit. 21, § 1111; § 1114 (A)(4); see also Stadler v. State, 918 P.2d 439, 441 n.2 (Okla. Crim. App. 1996); Simms v. State, 735 P.2d 344, 347 (Okla. Crim. App. 1987). Thus, it does not necessarily follow that the OCCA's finding of insufficient evidence for the HAC aggravating circumstance also means there was insufficient evidence to support rape.

Nonetheless, the Court is not convinced that Myers implicitly raised the issue of insufficient evidence of rape on direct appeal. Nor did the OCCA's decision implicitly rule on the issue.

---

[12] Although the OCCA was not presented with a claim that the rape conviction was not supported by sufficient evidence, that court did discuss the circumstantial rape evidence in addressing the challenges to Dr. Distefano's testimony, as noted in ground five above. See Myers II, 133 P.3d at 327.

Contrary to Myers' contention, the OCCA did not make a "*sua sponte* finding effectively establishing there was insufficient evidence to prove that Ms. Williams was raped." See Dkt. # 23 at 158. The Court finds that Myers' ground six claim was not raised in state court proceedings, is unexhausted, and would be subject to a procedural bar if he were allowed to return to state court to raise the issue at this late date. As noted earlier, this Court may not consider Myers' procedurally defaulted claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman, 501 U.S. at 750; Demarest, 130 F.3d at 941-42. In this case, Myers provides no argument to overcome the procedural bar by demonstrating cause and prejudice or a fundamental miscarriage of justice. Accordingly, the Court concludes that Myers' ground six defaulted claim is procedurally barred, Coleman, 510 U.S. at 724, and he is not entitled to habeas corpus relief on his claim of insufficient evidence to support his rape conviction.

## V.      Instructional error and ineffective assistance of appellate counsel (ground 7)

In ground seven, Myers contends the following second stage instruction was unconstitutional because it did not expressly state that the jury must find aggravating factors outweigh mitigating factors beyond a reasonable doubt:

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances. Even if you find that the aggravating circumstances outweighs [sic] the mitigating circumstances, you may impose a sentence of imprisonment for life or imprisonment for life without parole.

<u>See</u> O.R. Vol. VII at 1338. Myers argues that the question whether aggravating circumstances outweigh mitigating circumstances implicates a factual finding that must be made by the jury beyond a reasonable doubt pursuant to <u>Jones v. United States</u>, 526 U.S. 227 (1999), <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Ring v. Arizona</u>, 536 U.S. 227 (2002). He also argues that his appellate counsel was constitutionally ineffective for failing to raise the claim on direct appeal.

This issue was raised as Proposition Two in Myers' first application for post-conviction relief. The OCCA found that the first part of the issue was waived because it could have been raised on direct appeal. Dkt. # 23, attachment 1. Noting that it had rejected the same issue "repeatedly" in other cases, the OCCA also found that appellate counsel was not constitutionally ineffective for failing to raise a meritless argument. <u>Id.</u> Respondent claims the underlying issue is procedurally barred, but can be denied on the merits nonetheless. Dkt. # 38 at 85.

A procedural bar analysis is unnecessary as Myers' ground seven claims are foreclosed by established Tenth Circuit precedent. <u>Matthews v. Workman</u>, 577 F.3d 1175, 1195 (10th Cir. 2009). The petitioner in <u>Matthews</u> raised the same issues that Myers raises in ground seven. In rejecting the claims, the Circuit Court found:

> Mr. Matthews complains about the trial court's penalty stage jury instructions. To impose a sentence of death, under its instructions, the jury was required to find the existence of any aggravating circumstance beyond a reasonable doubt and that the aggravating circumstances outweighed mitigating circumstances. Mr. Matthews contends it should also have been instructed that it had to find beyond a reasonable doubt that aggravating factors outweighed the mitigating. The failure to include an instruction on this last point, Mr. Matthews contends, violated his Sixth Amendment rights. In his view, the question whether aggravating circumstances outweigh mitigating circumstances implicates a factual finding that increases the maximum penalty for his crime, and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and <u>Ring v. Arizona</u>, 536 U.S. 584, 588, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), require that juries make such factual findings beyond a reasonable doubt. FN9

FN9. The trial court instructed the jury as follows: "If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you find that any such aggravating circumstances outweigh the finding of one or more mitigating circumstances. Even if you find that the aggravating circumstances outweigh the mitigating circumstances, you may impose a sentence of imprisonment for life with the possibility of parole or imprisonment for life without the possibility of parole." State Court Record at 2387.

The State argues that Mr. Matthews's claim is procedurally barred because Mr. Matthews failed to raise this issue in his direct appeal. Claims defaulted in state court on adequate and independent state procedural grounds may not be considered by a federal habeas court unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S.Ct. 2546. Mr. Matthews replies that he can meet this standard because his lawyer on direct appeal provided ineffective assistance by failing to raise his Apprendi/Ring claim.

Whether or not it is barred procedurally, Mr. Matthews's Apprendi argument is certainly barred on the merits by dint of our decision in United States v. Barrett, 496 F.3d 1079, 1107 (10th Cir. 2007). There, we explained that the jury's determination that aggravating factors outweigh mitigating factors is not a finding of fact subject to Apprendi but a "highly subjective, largely moral judgment regarding the punishment that a particular person deserves." Id. at 1107 (citing Caldwell v. Mississippi, 472 U.S. 320, 340 n.7, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). We are of course bound by this decision as the law of the circuit, and we likewise can hardly say that appellate counsel on direct appeal rendered constitutionally ineffective assistance by failing to raise a point of law that we have rejected as erroneous. See Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Matthews, 577 F.3d at 1195. For the same reasons explained in Matthews, Myers is not entitled to habeas relief on his ground seven claim.

## VI.    Improper reweighing by OCCA (ground 8)

Next, Myers contends that, upon finding insufficient evidence to support the HAC aggravating circumstance, the OCCA's refusal to set aside the death penalty after reweighing the aggravating and mitigating circumstances was unconstitutional. He argues that the appellate

reweighing violated his right to have a jury determine his sentence as required by Apprendi, Ring, and Hicks v. Oklahoma. Respondent concedes that this issue is properly before this Court as it was raised, and rejected, in Myers' petition for rehearing his direct appeal. Respondent argues that the OCCA's decision upon reweighing was not a violation of Myers' constitutional rights.

In Clemons v. Mississippi, 494 U.S. 738, 745 (1990), the Supreme Court held that a defendant's constitutional rights are not "infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence." However, the state appellate court must, at a minimum, "actually reweigh[]" the evidence. Richmond v. Lewis, 506 U.S. 40, 48 (1992). A reviewing court cannot "'cure' the error without deciding, itself, that the valid aggravating factors are weightier than the mitigating factors." Id.

In Myers' direct appeal, the OCCA set out a detailed analysis of its consideration of the remaining aggravating circumstances and mitigating factors. Portions of the direct appeal opinion in which the OCCA sets forth its reweighing analysis follow:

> In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. See 21 O.S.1991, § 701.13(C). The jury found the existence of four (4) aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; (2) the Defendant was previously convicted of a felony involving the use or threat of violence; (3) the existence of a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society; and, (4) the murder was committed for the purpose of avoiding arrest or preventing a lawful arrest or prosecution. 21 O.S.2001, § 701.12(1), (4), (5), and (7).
>
> In Proposition Fourteen, this Court found the evidence insufficient to support the jury's finding of the heinous, atrocious, or cruel aggravator.
> . . .

48

[W]hen this Court invalidates an aggravator and at least one valid aggravating circumstance remains which enables the jury (or the judge in a bench trial) to give aggravating weight to the same facts and circumstances which supported the invalid aggravator, it will continue to reweigh the evidence and uphold the death sentence if the remaining aggravating circumstances outweigh the mitigating circumstances and the weight of the improper aggravator is harmless. Clemons v. Mississippi, 494 U.S. 738, 741, 110 S.Ct. 1441, 1444, 108 L.Ed.2d 725 (1990); Valdez v. State, 1995 OK CR 18, ¶ 73, 900 P.2d 363, 384. We may find an improper aggravator to be harmless error if, looking at the record, the Court finds that the elimination of the improper aggravator cannot affect the balance beyond a reasonable doubt. McGregor v. State, 1994 OK CR 71, ¶ 48, 885 P.2d 1366, 1385-1386. This "independent reweighing of aggravating and mitigating circumstances where one of several aggravating circumstances has been invalidated is implicit to our statutory duty to determine the factual substantiation of a verdict and validity of a death sentence." McGregor, id.

Three aggravating circumstances remain: (1) the Defendant was previously convicted of a felony involving the use or threat of violence; (2) the existence of a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society; and, (3) the murder was committed for the purpose of avoiding arrest or preventing a lawful arrest or prosecution. The evidence offered in support of each of these remaining aggravators was substantial.

The State presented evidence which showed Myers had been previously convicted of assault with intent to commit rape, murder and possession of a firearm after a felony conviction. This evidence was more than sufficient to prove Myers was previously convicted of a felony involving the use or threat of violence. Williams, 2001 OK CR 9, ¶ 130, 22 P.3d at 732.

Evidence of the prior violent felony convictions, plus evidence of Myers's prior unadjudicated acts of violent conduct towards his step-daughter, and evidence showing the sheer callousness of the murder, was all compelling evidence supporting the continuing threat aggravator. Young, 2000 OK CR 17, ¶ 78, 12 P.3d 20, 42.

Lastly, in support of the avoid arrest or prosecution aggravator, the State's evidence showed Myers abducted Shawn Williams and took her to a secluded place where he physically and sexually assaulted her and killed her. Carter v. State, 1994 OK CR 49, ¶ 49, 879 P.2d 1234, 1250 (this aggravator requires a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution). Bonnie Makin testified about the sexual assault Myers committed against her, for which he was prosecuted and convicted. After the assault, which Myers committed in a secluded area, Myers drove Makin to town and told her if she told anyone, he would "finish it off." From this evidence, the jury could properly conclude Myers killed Williams to avoid arrest and prosecution for the crimes he committed against her.

Myers called three mitigation witnesses. Dr. Phillip Murphy, a clinical psychologist, evaluated Myers and testified his IQ scores placed him in a borderline range-between normal functioning and mentally retarded functioning. His performance IQ was much higher than his verbal IQ, which was consistent with his dyslexia and aphasia. Murphy testified Myers has severe deficits in language reception and expression and other neurological testing showed he has moderate to severe brain damage most likely caused from a head injury he suffered when he was eight years old.

Myers's case manager at DOC testified Myers had not had any disciplinary problems while at the Oklahoma State Penitentiary.

Myers's sister, Hazel Robitaille, described their childhood. When she and Myers were young children, her mother and father split. Her mother's boyfriend lived with them for about one year; he was very abusive to Myers-physically and emotionally. Robitaille said Myers was hit by a car when he was about eight years old. He was running away from some children who were teasing him and when he ran into the street, he was hit by a car. He was in the hospital for a very long time and was in a coma. When he finally woke up, he was withdrawn and wouldn't talk to anybody. When he returned to school, he did not do well. The other children always teased him and treated him like he did not belong. He often got in fights and even the teachers ridiculed him. Their mother remarried another man who also was abusive towards Myers. Robitaille recalled one time when this man (Garinger) urinated on Myers's head. After their mother and Garinger split up, another boyfriend (Lake) also was abusive toward Myers. He used [to] make Myers pick up cow patties and once tried to run over him. Robitaille testified she loved her brother and would continue to remain in contact with him even if he spent the remainder of his life in prison.

Although the mitigating evidence was uncontroverted, it was not overly compelling or unusually persuasive. The evidence supporting the aggravating circumstances was strong. Upon reweighing the remaining valid aggravating circumstances against the mitigating evidence, we find the aggravating circumstances outweighed the mitigating evidence and supported the death sentence. Had the jury considered only these valid aggravating circumstances, we find beyond a reasonable doubt the jury would have imposed the same sentence of death.

Upon review of the record, we are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the three valid aggravating circumstances.

Myers II, 133 P.3d at 336 - 39 (footnote omitted). In light of Clemons, the OCCA did not violate

Myers' constitutional rights by reweighing the aggravating and mitigating circumstances itself rather

than sending the matter back to district court for a jury decision. Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. <u>Zant v. Stephens</u>, 462 U.S. 862 (1983). The OCCA conducted a thorough analysis of each of the aggravating and mitigating circumstances in its reweighing process, before concluding that the three remaining aggravating circumstances outweighed the mitigating circumstances. The OCCA's decision was not contrary to, or an unreasonable application of Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2). Myers is not entitled to relief on his ground eight claim.

## VII.    Testimony of jailhouse informant (ground 9)

In his ninth ground for relief, Myers claims that the admission into evidence of the testimony of jailhouse informant, Sidney Byrd, infringed upon his Eighth and Fourteenth Amendment rights. <u>See</u> Dkt. # 23 at 172. This claim was raised as Proposition I in Myers' direct appeal before the OCCA. Respondent contends that Myers has failed to demonstrate how the OCCA's denial of relief on this ground was contrary to, or an unreasonable application of, Supreme Court law.

During Myers' trial, in response to a defense objection concerning the testimony presented through jailhouse informant, Sidney Byrd, the trial judge conducted an in-camera hearing to determine the admissibility of the informant's testimony under the parameters of <u>Dodd v. State</u>, 993 P.2d 778 (Okla. Crim. App. 2000). <u>See</u> Tr. Trans. Vol. VIII at 2147-2202. After hearing Mr. Byrd's testimony and argument from both sides, the trial court ruled the testimony and evidence presented by Byrd was admissible. <u>Id.</u> at 2202.  In addition, the trial judge instructed the jury as follows:

> INSTRUCTION NO. 20: The testimony of an informer who provides evidence against a defendant must be examined and weighed by you with greater care than the

testimony of an ordinary witness. Whether the informer's testimony has been affected by interest or prejudice against the defendant is for you to determine. In making that determination, you should consider: (1) whether the witness has received anything including pay, immunity from prosecution, leniency in prosecution, personal advantage, or vindication in exchange for testimony; (2) any other case in which the informant testified or offered statements against an individual but was not called, and whether the statements were admitted in the case, and whether the informant received any deal, promise, inducement, or benefit in exchange for that testimony or statement; (3) whether the informant has ever changed his or her testimony; (4) the criminal history of the informant; and (5) any other evidence relevant to the informer's credibility.

O.R. Vol. VII at 1308. The jury was also instructed that impeachment evidence could be considered "in determining the weight and credibility of a witness," including impeachment evidence that the witness had previously been convicted of a criminal offense. See id. at 1309, 1311 (Instruction No. 20A and No. 20C). Finally, the jurors were instructed that it was their responsibility to determine the credibility of each witness and the weight to be given to the testimony of each witness. See id. at 1315 (Instruction No. 24). In this case, defense counsel thoroughly and extensively cross-examined Sidney Byrd, attacking his credibility and exposing any motive he may have had to fabricate his testimony. See Tr. Trans. Vol. VIII at 2278-2357. The defense also presented two witnesses, Michael Yates and James Wells, to contradict and impeach Byrd. See Tr. Trans. Vol. IX at 2414-31, 2545-52.

On direct appeal, the OCCA rejected Myers' contention that the trial court erroneously determined Byrd's testimony was admissible, finding as follows:

Nothing in *Dodd* requires the trial court to exclude a jailhouse informant's testimony because his or her testimony is inconsistent, unbelievable, or self-serving. The point of *Dodd* was to require more thorough examination of informant evidence and complete and full disclosure of information relating to an informant's motivation to fabricate testimony. In this case, the trial court did not abuse its discretion by allowing the witness to testify. Any conflict or inconsistency in the witness's testimony goes to the weight and credibility of that testimony and are issues properly addressed on cross-examination. *See Gilson v. State*, 200 OK CR 14, ¶¶ 59-60, 8

52

P.3d 883, 906-907 (determination of competency of witnesses is left to the discretion of the trial judge; conflict and inconsistencies in testimony go to weight and credibility).

Myers II, 133 P.3d at 321-22. Under AEDPA, Myers must show that the OCCA's adjudication resulted in a decision that was contrary to or an unreasonable application of clearly established Supreme Court law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Upon review of the record, this Court concludes that the OCCA's decision was neither contrary to, nor an unreasonable application of Supreme Court law. Although Byrd's credibility was certainly in question, his testimony was not "so inherently unreliable the jury should not have been permitted to hear" it, as asserted by Myers. Dkt. # 23 at 177. As pointed out by the OCCA, the issue of Byrd's credibility was ultimately, and properly, left for the jury to determine. The Supreme Court has observed: "A fundamental premise of our criminal trial system is that 'the jury is the lie detector.'" United States v. Scheffer, 523 U.S. 303, 313 (1998) (quoting United States v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973)). "Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that]belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" Id. at 313 (quoting Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88 (1891)).

This was a case where an independent party (not a co-defendant) came to the district attorney with unsolicited information regarding Myers' incriminating admissions of culpability. Sidney Byrd was not acting as a government agent and was not promised benefits for his cooperation. The benefits which Byrd hoped to obtain for his cooperation were "mere expectancies." See, e.g., United States v. Taylor, 800 F.2d 1012, 1015 (10th Cir. 1986). The trial judge conducted a hearing on the admissibility of Byrd's testimony. This Court cannot find that the trial judge abused his discretion

in allowing the testimony, or that Myers' constitutional rights were violated by such ruling. His trial was not rendered fundamentally unfair. The OCCA's decision was not an unreasonable determination of Supreme Court law. Myers is not entitled to relief on his ground nine claim.

## VIII. Improper bolstering of Sidney Byrd's testimony (ground 10)

In ground ten, Myers states that the admission of investigator Elkin's hearsay testimony bolstering Sidney Byrd's testimony violated his Sixth Amendment right of confrontation and his Fourteenth Amendment right to due process. He claims this issue was raised as Proposition II in his direct appeal before the OCCA. Respondent contends that Myers' Proposition II was limited to state law challenges and made no mention of federal constitutional violations. Thus, Respondent alleges that Myers' ground ten claim is unexhausted and subject to procedural bar analysis. Respondent also argues that the OCCA's resolution of the state law issues was correct. Myers replies that the claim is exhausted and he is entitled to habeas corpus relief on the merits.

In arguing that the ground ten claims are exhausted, Myers takes the position that: (1) his brief reference in his state appeal brief to the Supreme Court case Tome v. United States, 513 U.S. 150 (1985)[13] was sufficient to fairly present his claim as a constitutional claim; (2) his due process claim was "implicit" in his direct appeal briefing; and (3) his constitutional right to be free from arbitrary deprivation of a state created liberty interest was "inherent in this claim" pursuant to Hicks v. Oklahoma, 447 U.S. 343 (1980). See Dkt. # 42 at 31. These arguments are unavailing. In his direct appeal brief, Myers cited Tome to support his argument that Elkin's hearsay testimony was inadmissible because the federal counterpart to Oklahoma's hearsay rule was similar. He did not present a federal constitutional claim concerning due process or confrontation clause violations in

---

[13]     The Tome decision addresses Rule 801 of the Federal Rules of Evidence.

his argument citing <u>Tome</u>. Proposition II in Myers' state court appeal brief does not even hint at a federal constitutional violation. The state courts must be provided a "fair opportunity" to apply controlling legal principles to the facts bearing upon a constitutional claim. <u>Picard v. Connor</u>, 404 U.S. 270, 276-77 (1971). To support the exhaustion requirement for a federal constitutional claim, it is not enough that a somewhat similar state-law claim was made before the state courts. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982).  Further, it is not sufficient to argue that his due process claim was "implicit" in his direct appeal briefing. The state courts must have had the first opportunity to hear the constitutional claim sought to be vindicated in the federal habeas proceeding. <u>Lee v. Crouse</u>, 451 F.3d 598, 611 (10th Cir. 2006) (citing <u>Picard</u>, 404 U.S. at 275-76). Finally, Myers' reliance on <u>Hicks</u> does not support his contention that his ground ten claims were presented to the state courts. A careful reading of his Proposition II direct appeal claim clearly reveals that Myers did not fairly present either a due process claim or a confrontation clause claim to the state court for review. Proposition II was based upon his claim that Elkin's hearsay evidence was a violation of state law. Thus, his federal claim, as presented in ground ten of his amended habeas petition, is unexhausted.

As a general rule, a federal court should dismiss unexhausted claims without prejudice so the petitioner can pursue available state court remedies. <u>Demarest v. Price</u>, 130 F.3d 922, 939 (10th Cir. 1997). However, if the state court would now find those claims procedurally barred, there is a procedural default for purposes of federal habeas review. <u>Dulin v. Cook</u>, 957 F.2d 758, 759 (10th Cir. 1992). Oklahoma courts would unquestionably deem Myers' due process and confrontation clause violations procedurally barred because Oklahoma's Uniform Post-Conviction Procedure Act requires that "[a]ll grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. . . [otherwise the ground] may not be the basis for

a subsequent application." Okla. Stat. tit. 22, § 1086; see also Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000) ("Oklahoma deems waived claims that were not raised in an initial application for post-conviction relief in a death penalty case.").

Myers may overcome the procedural bar only if he can demonstrate cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. He has asserted neither cause and prejudice excusing the default, nor suggested that this Court must review the claim to prevent a fundamental miscarriage of justice. Accordingly, Myers' current claims for violations of due process or of the confrontation clause regarding Elkin' testimony are unexhausted, and he is procedurally barred from raising these claims in this Court.

## IX. Impermissible identification testimony (ground 11)

Myers next complains that his due process rights were violated by witness Patricia Curry's identification of him. He contends that the circumstances under which Curry identified Myers "were so impermissibly suggestive they created a substantial likelihood of irreparable misidentification." Dkt. # 23 at 191. This claim was raised by Myers in Proposition III of his direct appeal, and rejected on the merits by the OCCA. The following factual background[14] is helpful in reviewing the OCCA's resolution of the issue:

> At trial, Patricia Curry, who owned and operated a flower shop in Bristow, Oklahoma in 1996, identified Myers as a man who came into her shop early one Saturday morning in July 1996. He told her he had been out drinking all night and wanted to purchase two roses for his wife. Curry said he knew he was "in trouble." When she suggested he should be careful "because when you slip out the front door someone might be slipping in the back door," he responded, "I will kill the bitch if anything like that would happen." When referring to his wife, he said he would "kill

---

[14]     The OCCA's factual summary of Patricia Curry's testimony is presumed correct. 28 U.S.C. § 2254(e)(1).  Myers has failed to rebut this presumption with clear and convincing evidence. Id.

the bitch and she was a whore and a slut and that he knew how to dispose of women."

He went on to tell Curry he needed back in his house; had been drunk all night; had gone to Wellston and picked up a hitchhiker, and that is how he got to Bristow. Myers asked her if she had ever heard of Rocky Point and told her you could dispose of women there. She responded that she had heard of Rocky Point and that it would be hard to dispose of her because she felt threatened. Curry testified she in fact felt threatened by his presence with her alone in the shop. He also asked if she had heard of the woman that was missing and stated that the "investigators had their heads so far up their ass they could never find anybody there and they didn't know what they were doing." Curry testified at that point she felt her life was in jeopardy.

When she finished preparing his roses, Myers gave her a one hundred dollar ($100.00) bill. She did not keep change for a large bill in her cash drawer, and she testified her conscience told her not to turn her back on Myers to walk to the back to obtain change. She handed the bill back to him and told him he could have the flowers and to pass on the kindness. She said Myers told her to go to the back for change, and she again refused. Myers took the flowers and walked out the door. She locked the door when he left and watched him drive away. Curry testified she locked the door because she felt threatened. She then called her husband.

Three weeks later, Curry saw the same man on a television news broadcast about an arrest at "Rocky Point." After the news broadcast, she called the Rogers County Sheriff's Department. Curry later wrote out a statement and picked Myers out of a photographic lineup. When questioned about her identification of him from the photographic lineup, Curry stated she did not pick him out because of what he was wearing; she said the orange shirt was "irrelevant . . . I didn't even think of it. I wasn't looking at his clothes, sir, I was looking at him."

Curry said the man stood right in front of her at the flower shop. He was in the shop alone with her for twenty or thirty minutes and she had a good opportunity to look at his face. He wore a snap up western shirt, "somewhat like what he has on today." He wore a welder's cap, gold chain, jeans and boots. His shirt was unbuttoned. Curry said she had no doubt that the man in her shop that day was Myers.

Myers II, 133 P.3d at 323. The OCCA concluded that Myers' Proposition III was without merit,

finding as follows:

Curry's testimony at trial was certain and showed her degree of attention towards the man in the flower shop was focused. She stood directly in front of Myers for twenty or thirty minutes and during that time was afraid to "turn her back" on him because she was fearful of him. Her testimony concerning her conversation with him in the

> flower shop was obviously relevant to show why she was so focused on him and why she was subsequently able to identify him. Her identification was sufficiently independently reliable to be admissible. The trial court did not abuse its discretion by allowing into evidence Curry's in-court identification of Myers. Bryson v. State, 1985 OK CR 107, ¶¶ 12-15, 711 P.2d 932, 934-935. Proposition Three is denied.

Id. Although the OCCA did not specifically discuss Supreme Court law or Myers' due process claim, the Bryson case it cited was founded on Supreme Court law. Quoting Simmons v. United States, 390 U.S. 377, 384 (1968), and Manson v. Brathwaite, 432 U.S. 98 (1977), the Bryson court summarized the standards used to determine if a witness's identification of the defendant was a due process violation. Bryson, 711 P.2d at 734. Respondent asserts that because the OCCA's rejection of this claim on direct appeal is not contrary to Supreme Court precedent, § 2254(d) prevents the granting of federal habeas relief on this issue. The Court agrees.

The Supreme Court has held that even where pretrial identification procedures are unduly suggestive, the in-court identification is still proper if the identification is shown to be independently reliable. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Simmons v. United States, 390 U.S. 377, 384 (1968). In Manson, the Court listed the criteria to be examined in evaluating this issue: "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation." Manson, 432 U.S. at 114; see also Neil v. Biggers, 409 U.S. 188, 199-200 (1972). In rejecting this claim on direct appeal, the OCCA cited the Bryson case which applied the factors listed in Manson.

In Myers' case, Patricia Curry testified that Myers came into her flower shop in July of 1996, staying for "approximately 20 to 30 minutes" and giving her ample opportunity to view his features. Tr. Trans. Vol. VII at 2411 She stated that she had a "good chance to have a good look at his face." Id. at 2410. She stated that she "felt threatened by him" and thought her life was in jeopardy at one point. Id. at 2411-12. After he left, she locked the door and called her husband to report what had happened. Id. at 2417-17. Approximately three weeks later, she saw Myers on television in connection with an arrest in Inola. Id. at 2417. She called the Rogers County Sheriff's Department and reported her earlier encounter with Myers at the flower shop. Id. at 2419. At her in-court identification, Ms. Curry indicated that she had "no doubt in her mind" that Myers was the same person who had come into her flower shop in July, 1996. Id. at 2422.

Weighing all the factors and considering the totality of the circumstances, there is no substantial likelihood of misidentification by Patricia Curry. The OCCA's rejection of Myers' claim was not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Accordingly, the Court finds that, pursuant to § 2254(d), Myers is not entitled to habeas corpus relief on his ground eleven claim.

## X.     Improper bolstering of Patricia Curry's testimony (ground 12)

At the conclusion of Patricia Curry's testimony, the prosecution recalled investigator Larry Elkin as a witness. Among other "clean-up" matters, Elkin testified about Ms. Curry's identification of Myers. In a short, two paragraph argument in Proposition IV of his direct appeal, Myers urged the OCCA to reverse his conviction because the trial court erred in admitting Elkin's testimony regarding Curry's identification. The issue was presented to the OCCA as a state law claim. He cited two state cases in support: Aycox v. State, 702 P.2d 1057 (Okla. Crim. App. 1985) (finding trial

counsel ineffective for failing to challenge third party testimony regarding an identification since it was a violation of state law), and <u>Maple v. State</u>, 662 P.2d 315, 316 (Okla. Crim. App. 1983) (upholding state evidentiary rule that testimony regarding extra-judicial identification is limited to identifyer, not third parties). The decisions in these Oklahoma cases were based on state law violations rather than violations of the United States Constitution. Further, Myers' direct appeal brief does not refer in any way to the federal constitution. However, in ground twelve of his amended habeas petition, Myers claims his right to due process under the Fourteenth Amendment was violated by the "bolstering" testimony of Elkin.

Respondent argues that Myers' ground twelve claim, insofar as it alleges a federal constitutional violation is unexhausted and should be considered procedurally barred. Myers replies that the OCCA addressed his claim on the merits, finding harmless error but denying relief. And again, he contends that although his state appellate claim only specifically alleged a violation of state law, "inherent in the claim is the recognized federal constitutional right to be free from arbitrary deprivation of a state created liberty interest." Dkt. # 42 at 49. Myers does not offer any argument to excuse a procedural bar, such as cause and prejudice or a fundamental miscarriage of justice, because he believes the federal constitutional claim was an inherent part of his state law claim, and the OCCA addressed the merits on direct appeal. Notwithstanding the OCCA's resolution of Myers' state law claim, the state appellate court was not given the opportunity to address any alleged violation of Myers' rights under the United States Constitution. Thus, the Court concludes that Myers' Fourteenth Amendment due process claim as stated in ground twelve is unexhausted. Because he no longer has an adequate state remedy available, this Court finds the ground twelve

federal constitutional issue would be procedurally barred. Myers is not entitled to federal habeas corpus relief on ground twelve.

## XI.     Denial of right to present defense evidence (ground 13)

In ground thirteen, Myers contends that his Sixth and Fourteenth Amendment rights were violated when the trial court restricted his efforts to present defense evidence in two ways: (1) by refusing to allow the testimony of his investigator, Charles Maybee, regarding Myers' speech impediment, and (2) by refusing to allow testimony identifying sources of Sidney Byrd's knowledge about Myers' case.[15] He argues he should have been allowed to present evidence to impeach Curry's identification and to explain Byrd's knowledge about the case. This claim was raised as Proposition V on direct appeal. Respondent contends that the OCCA's denial of relief was not an unreasonable application of Supreme Court law.

### A.     Speech impediment testimony

One of Myers' defense witnesses was OIDS investigator, Charles Maybee. Because Patricia Curry testified on cross-examination that she was not aware of a noticeable speech impediment in Myers' speech, see Tr. Trans. Vol. IX at 2435, Myers' counsel attempted to question Maybee as to whether Myers has a speech impediment. Id. at 2504. The prosecution objected to the inquiry and the trial court sustained the objection. Id. at 2505. Myers asserts that investigator Maybee's

---

[15]     To the extent Myers contends that the trial court's rulings were a violation of Oklahoma's evidence law, this claim is not reviewable in this federal habeas corpus proceeding. Habeas review is not available to correct state law evidentiary errors. Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (habeas review is limited to violations of constitutional rights)). This Court is concerned only with the possible infringement of federal constitutional rights. Accordingly, the Court will review the trial court's evidentiary rulings only insofar as Myers' federal constitutional rights may have been impacted.

testimony was necessary to impeach Patricia Curry's identification of Myers. As Myers points out, the prosecution was allowed to ask witnesses whether Myers had a speech impediment without interference from the trial judge. For example, witness Charles Sharp responded to the prosecutor's inquiry about Myers' alleged speech impediment, stating that he never noticed an impediment. Tr. Trans. Vol. X at 2847. However, the inquiry of witness Sharp was conducted in second stage proceedings, after Myers had been found guilty of first degree murder by the jury.

The OCCA found error in the trial court's ruling not to allow witness Maybee to testify about a speech impediment. In denying relief, the OCCA explained:

> Although the trial court erred, no relief is required. A conviction should not be set aside for insubstantial errors. A defendant is entitled to a fair trial, not a perfect one. *See Douglas*, 1997 OK CR 79, ¶ 45, 951 P.2d at 667. In the case of an evidentiary error, the proper inquiry is whether this Court has "grave doubts" that the outcome of the trial would have been materially affected had the error not occurred. *Id.*

> Even if the jury heard Maybe's [sic] opinion that Myers had a speech impediment, that testimony would only have been relevant in the jury's consideration of the reliability of Curry's identification of Myers as the man in her flower shop. So many other factors supported the reliability of her identification, we doubt a swearing match between Curry and a defense investigator concerning a speech impediment would have much affect [sic] on the jury's consideration of her identification or on the jury's verdict.

Myers II, 133 P.3d at 325. This Court agrees that the trial court's refusal to allow Maybee to testify about Myers' alleged speech impediment was error. However, the Supreme Court has held that:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in <u>Brecht</u>, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in <u>Chapman</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

<u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007). The <u>Fry</u> Court also noted that, "[t]he opinion in <u>Brecht</u>[16] clearly assumed that the <u>Kotteakos</u> standard[17] would apply in virtually all § 2254 cases." <u>Id.</u> at 117. Under the <u>Brecht/Kotteakos</u> standard, the Court will grant relief if it finds the error substantially influenced the jury's decision, or if the Court is in grave doubt as to the harmlessness of the error. <u>See</u> <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995); <u>Bland v. Sirmons</u>, 459 F.3d 999, 1009 (10th Cir. 2006). Relevant factors to be considered in the harmlessness analysis include the importance of the evidence to the State's case, whether the evidence was cumulative, whether there is other evidence corroborating or contradicting the evidence, the extent of questioning that was otherwise permitted, and the strength of the State's case. <u>Cf.</u> <u>Delaware v. Van Arsdall,</u> 475 U.S. 673, 684 (1986) (listing factors to consider when conducting harmless-error analysis under <u>Chapman</u>). For the reasons that follow, this Court concludes that any error in refusing to allow Maybee's speech impediment testimony was harmless under the <u>Brecht</u> standard.

Myers states that the disallowed testimony was intended to impeach Patricia Curry's identification testimony. As the OCCA noted, other factors supported the veracity of Curry's identification. <u>Myers II</u>, 133 P.3d at 325. Although it was error for the trial court to disallow defense counsel's question of Maybee regarding Myers' speech, the Court agrees with the OCCA that the trial error was harmless. The Court does not have grave doubts as to the harmlessness of the trial court's error in denying Myers the right to have Maybee testify about Myers' alleged speech

---

[16]    <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).

[17]    The <u>Kotteakos</u> standard asks whether an error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946).

impediment. Nor does the Court believe that the denial of Myers' right to question Maybee about the speech impediment had a substantial and injurious effect on the jury's decision.

The Court further notes that considerable deference must be given to state court evidentiary rulings, and may not provide habeas relief unless those rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002); see also Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir. 1979) ("State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."). In this case, Myers has not demonstrated that the trial court's evidentiary ruling denying Maybee's testimony about Myers' alleged speech impediment rendered his trial, as a whole, fundamentally unfair. Habeas relief shall be denied on this portion of Myers' thirteenth ground for relief.

### B.     Testimony about Sidney Byrd's knowledge of Myers' case

In the second part of ground thirteen, Myers complains about the trial court's denial of his attempt to present evidence through Maybee that might explain how jailhouse informant Sidney Byrd knew details regarding Myers' case. He wanted to question Maybee about the press coverage of Myers' preliminary hearing and facts made known to the public at the time. The prosecution objected, and the trial court sustained the objection finding the matter irrelevant and too speculative. Tr. Trans. Vol. IX at 2507.  The OCCA found no error occurred, noting:

> The trial court's decision to limit the defense in this area was not an abuse of discretion. Byrd testified he had not seen any news articles or heard any television reports concerning Myers. That in fact there might have been newspaper articles published or television news reports made during the three weeks prior to November 4, 1996, when Byrd was in the Rogers County area does not establish that in fact Byrd saw those articles and/or reports. Even if Maybe [sic] had testified that there were news articles and/or television reports, such testimony would not establish that

> Byrd saw them. The trial court ruled the question was not relevant and was "too speculative." We agree, and find no error occurred.

Myers II, 133 P. 3d at 325 (citing Okla. Stat. tit. 12, § 2701). Although Myers claims in his reply that the "OCCA's reasoning is flawed" he fails to support his claim with Supreme Court citations. In fact, nothing presented by Myers in this habeas action suggests that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of Supreme Court law. Accordingly, he is not entitled to habeas corpus relief on this portion of his ground thirteen claim.

## XII.  Improper trial court rulings regarding DNA testimony (ground 14)

Myers' ground fourteen claim mirrors his Proposition VI direct appeal claim in which he asserts that the trial court ruled erroneously multiple times during the presentation of DNA testimony by witnesses, Mary Long and Arthur J. Eisenberg, Ph.D. He argues that these rulings violated his constitutional right of confrontation, his right to due process, and his right to a fair trial. Dkt. # 23 at 212. First, he contends that the trial judge improperly allowed the prosecution to bolster one expert with another. Second, he claims he was improperly restricted in his cross-examination of these witnesses. The OCCA rejected Myers' claims, and Respondent contends that the OCCA's decision was not contrary to, or an unreasonable application of, clearly established law as determined by the United States Supreme Court.

### A.  Two experts

In the first part of ground fourteen, Myers asserts that the trial court erred in allowing Dr. Eisenberg to testify[18] because his testimony was cumulative and constituted improper bolstering of Mary Long's testimony. His claim predominantly alleges violations of state law. Dkt. # 23 at 213-14. Insofar as Myers relies on state law violations, the issue is not cognizable in this habeas corpus proceeding. "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Although Myers summarily asserts that his United States constitutional rights were violated, he does not explain how the judge's rulings and the alleged "bolstering" violate the Federal Constitution. Instead, he relies on Oklahoma statutes and case law to support this first part of his ground fourteen claim. He provides no further argument or discussion beyond a cursory mention of constitutional violations. This Court will not craft Myers' legal theories for him. His perfunctory mention of federal constitutional violations insofar as they are related to the first part of his ground fourteen claim is insufficient to convince this Court that a constitutional violation occurred. He also fails to demonstrate how the OCCA's resolution of this part of his claim was contrary to or an unreasonable application of Supreme Court law, or an unreasonable determination of the facts. 28 U.S.C. § 2254. Having failed to provide any argument or authority which satisfies his burden under AEDPA, Myers is not entitled to habeas relief on his claim that the trial erred in allowing Dr. Eisenberg to testify.

**B.      Rulings on cross-examination**

---

[18]      As noted by the OCCA, the jury heard Dr. Eisenberg's testimony, out of order, just after Mary Long had begun her testimony.  During a break in her testimony it was agreed that Dr. Eisenberg would be called to give his testimony in order to accommodate his schedule. Myers II, 133 P.3d at 325-26.

In the second part of ground fourteen, Myers contends that the trial court repeatedly hampered defense counsel's efforts to impeach the DNA experts by: (1) refusing to allow counsel to ask certain questions about the lab co-founded by Dr. Eisenberg; (2) preventing questions about Dr. Eisenberg's participation in certain organizations involved in the use of DNA analysis; and (3) prohibiting questions of Mary Long regarding a case in Britain where an innocent man was mistakenly matched through DNA analysis. Myers claims the trial court's rulings prevented him from fully cross-examining the witnesses in violation of his Sixth Amendment right to confront witnesses and his Fourteenth Amendment right to due process.

On direct appeal, the OCCA rejected Myers' claim, finding:

> Here, the trial court properly sustained numerous State's objections to questions which called for speculative answers, questions which were previously asked and answered, questions which were improper impeachment attempts, and questions which were argumentative. In some instances following a State's objection, counsel rephrased. Defense counsel conducted a thorough and extensive cross-examination of Eisenberg. We find no obvious and prejudicial limitation by the trial court of the scope of cross-examination in this case. *Reeves v. State*, 1991 OK CR 101, ¶ 30, 818 P.2d 495, 501.

Myers II, 133 P.3d at 326. Respondent argues that Myers has failed to demonstrate that the OCCA's decision was an unreasonable application of Supreme Court law. Alternatively, Respondent argues that, even if constitutional error is found, the error is harmless.

"The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Ohio v. Roberts, 448 U.S. 56, 62-63 (1980), *abrogated on other grounds in* Crawford v. Washington, 541 U.S. 36 (2004). Further, "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence §

1395, p. 123 (3d ed. 1940)).  However, it is well settled that limits on cross-examination are within the discretion of the trial court. <u>Miranda v. Cooper</u>, 967 F.2d 392, 396 (10th Cir. 1992) (citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986) (noting trial judges have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits" on cross-examination); <u>United States v. Atwell</u>, 766 F.2d 416 (10th Cir. 1985)).

The Supreme Court has ruled that a criminal defendant states a Confrontation Clause violation by showing he was "prohibited from engaging in otherwise appropriate cross-examination." <u>Davis</u>, 415 U.S. at 318. However, not all constitutional errors require reversal of a conviction. <u>Chapman v. California</u>, 386 U.S. 18 (1986). Since <u>Chapman</u>, the Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." <u>Van Arsdall</u>, 475 U.S. at 681. Further, the "denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." <u>Id.</u> at 682 (citing <u>Brown v. United States</u>, 411 U.S. 223 (1973)).

Thus, even if Myers' Confrontation Clause rights were violated, a harmless-error analysis must be applied. "Whether the error is harmless depends upon a host of factors, including: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case." <u>United States v. Williams</u>, 576 F.3d 1149, 1165 (10th Cir. 2009) (citing <u>Van Arsdall</u>, 475 U.S. at 684).

Myers argues that he was denied an opportunity to cast doubt upon the DNA results which linked him to Shawn Williams. However, the questions he was not allowed to ask Dr. Eisenberg were designed to cast doubt upon Dr. Eisenberg's credentials and qualifications, rather than the actual DNA results linking him to Shawn Williams. Dr. Eisenberg's testimony was not critical to the prosecution's case. He testified about the quality of the case work at the OSBI lab and about the accreditation process. Tr. Trans. Vol. VII at 1851-1856. The trial court's refusal to allow the questions on cross-examination of Dr. Eisenberg of which Myers now complains, if error, was harmless. Myers is not entitled to habeas corpus relief insofar as he claims constitutional error related to his cross-examination of Dr. Eisenberg.

Myers also contends that the court's ruling which prohibited him from questioning Mary Long about a case in Britain where an innocent man was mistakenly matched through DNA analysis violated his constitutional rights. While this ruling is a bit more troubling than the questions Myers was prohibited from asking Dr. Eisenberg, the Court finds that any error was harmless. Although the prosecution's case was not overwhelming, it was strong. The Court does not have "grave doubts" that the exclusion of testimony regarding the British case resulted in an unfair trial for Myers. He has not demonstrated that the OCCA's denial of relief on this claim was an unreasonable application of Supreme Court law.

## XIII.  Improper evidence of other crimes (ground 15)

In his fifteenth ground for relief, Myers contends that his due process rights to a fair trial were violated when three prosecution witnesses made references which could be interpreted by the jury as evidence of other murders. First, he argues prejudice caused by Sidney Byrd's comment that Myers "was telling me about raping and murdering these *women . . . .*" Tr. Trans. Vol. VIII at 2363.

Next, he contends that the trial court erred in allowing Patricia Curry to include in her testimony that Myers told her "he knew how to dispose of *women.*" Id. at 2412. Finally, he complains that OSBI expert witness Mary Long improperly referred to the Marzano murder when she responded to a question about how evidence was labeled by stating one of the envelopes was labeled "T108 Mark Marzano." Tr. Trans. Vol. VII at 1999.

This claim was raised on direct appeal and rejected by the OCCA. The OCCA noted that Myers' trial counsel objected after each of the alleged wrongful references. Myers II, 133 P.3d at 327-28. The trial judge instructed the jury to disregard Byrd's statement and not consider it in their deliberations. However, the judge allowed Patricia's Curry's testimony because she was quoting Myers when she said he told her about Rocky Point and that he knew how to dispose of women there. The OCCA ruled as follows:

> We find no error in the manner which the trial court handled the objections to these two witnesses' reference to plural victims. *See Al-Mosawi v. State*, 1996 OK CR 59, ¶ 59, 929 P.2d 270, 284 (a trial court's admonition to jury to disregard the remarks of counsel or of a witness usually cures any error unless it is of such a nature, after considering the evidence, that the error appears to have determined the verdict).

Id. at 328. The OCCA found that Byrd's statement was not verdict determinative. Further, the statement by Curry was a direct quote from Myers and directly related to the crime in question. Id. As to the mention of Mark Marzano's DNA, the OCCA found:

> We are not persuaded that the mere mention of the name Marzano was the equivalent of the admission of other crimes evidence. Myers's argument is purely speculative and we find the trial court's decision to caution the witness to avoid reference to the name a completely appropriate curative action and no further relief is required.

Id.

The OCCA 's decision on this issue did not expressly address federal constitutional issues, but relied largely on state law precedent to address the claim. Id. at 327. Nonetheless, AEDPA

deference applies. See Welch v. Sirmons, 451 F.3d 675, 691-92 (10th Cir. 2006), *abrogated on other grounds in* Wackerly v. Workman, 580 F.3d 1171 (10th Cir. 2009) (quoting Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002)).

To be entitled to federal habeas relief, Myers must establish that the OCCA's determination of this issue is contrary to or an unreasonable application of clearly established federal law. See Packer, 537 U.S. at 8. As the Tenth Circuit explained in Welch, the clearly established federal law governing habeas review of admission of other crimes evidence is found in the Due Process Clause of the Fourteenth Amendment which provides a mechanism for relief "when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair.'" Welch, 451 F.3d at 688 (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). Considerable deference must be given to state court evidentiary rulings, and a federal court may not provide habeas relief unless those rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002); see also Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir. 1979) ("State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."). In this case, Myers has not demonstrated that the trial court's evidentiary rulings concerning the mention of "women" by both Sidney Byrd and Patricia Curry and Mary Long's reference to the labeling of Mark Marzano's DNA sample rendered his trial, as a whole, fundamentally unfair.

## XIV. Improper admission of immunized statement (ground 16)

During the second stage (penalty phase) of Myers' trial, the State presented witness Charles Sharp, who served as Sheriff of Cherokee County, Kansas, in the late 1970s and early 1980s (Tr.

Trans. Vol. X at 2836-2856). Sharp testified that during his tenure as Sheriff, he investigated the disappearance and murder of Charles Chink Enders. Id. at 2837-38. Although Myers was not a suspect in the Enders murder, id. at 2854, he was interviewed because the sheriff believed he had information regarding the murder. Upon receiving immunity from prosecution, id. at 2854, Myers confessed to the murder of Enders. Myers was not prosecuted for the murder because he had been granted immunity.

Myers claims in his sixteenth ground that the admission of Sheriff Sharp's testimony violated his federal constitutional rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments. Insofar as Myers claims a Fourteenth Amendment due process violation, this issue was raised and rejected on direct appeal. Even though not raised or addressed in state court, Myers' Eighth Amendment claim shall be rejected on the merits as he provides no explanation, argument or authorities to support a claim based on the Eighth Amendment. 28 U.S.C. § 2254(b)(2). This Court will not craft Myers' legal theories for him. His undeveloped reference to Eighth Amendment violations based on the improper admission of Officer Sharp's testimony is insufficient to convince the Court that a constitutional violation occurred.

On direct appeal, Myers argued that admission of Officer Sharp's testimony during second stage proceedings was a violation of his Fifth[19] and Fourteenth Amendment rights. See Proposition XII, Brief of Appellant in OCCA Case No. D-2000-271. An identical claim was raised in the Myers I appeal because Officer Sharp had also testified in the second stage of the Marzano trial about Myers' confession to the Enders murder. As it had in Myers I, and without specifically identifying

---

[19]    Other than in the heading to ground sixteen, Myers makes no claim in his amended habeas petition of a Fifth Amendment violation. See Dkt. # 23 at 193.

what constitutional right was violated, the OCCA found constitutional error in the introduction of testimony concerning Myers' confession to Sheriff Sharp. Myers II, 133 P.3d at 333. Citing Bryson v. State, 876 P.2d 240, 256-57 (Okla. Crim. App. 1994) (relying on Chapman v. California, 386 U.S. 18, 24 (1967)), for the proposition that a constitutional error is subject to harmless error analysis, the OCCA concluded that the error was harmless. Id. at 1034-35. The state appellate court explained, as follows:

> In Proposition Twelve, Myers claims his constitutional rights were violated when the testimony of State's witness Charles Sharp was admitted. Sharp, a former sheriff from Cherokee County, Kansas, testified that Myers confessed he killed Chink Elders in Kansas in 1978. Sharp testified Myers was never prosecuted for the murder because Sharp granted Myers complete immunity from prosecution before he confessed.

> This Court addressed this issue in *Myers I*. Myers was prosecuted in that case for the murder of Cindy Marzano. Sharp's testimony in this case was virtually identical to that given in the Marzano case.

> In *Myers I*, we said, "A confession made under the promise of immunity cannot be considered a voluntary confession." 2000 OK CR 25, ¶ 55, 17 P.3d at 1034.

>> To be admissible, a confession must be "free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Brady v. United States*, 397 U.S. 742, 754, 90 S.Ct. 1463, 1471-72, 25 L.Ed.2d 747 (1970), *quoting Bram v. United States*, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897); *see also, Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). This Court has stated that "[A] confession made or induced by promise of reward or benefit ... would be deemed involuntary, and would not be admissible." *Ex parte Ellis*, 1963 OK CR 62, ¶ 18, 383 P.2d 706, 709.

> *Id*. There, we determined the promise of immunity was clearly used to obtain the confession. The confession would have been inadmissible against Myers in a criminal trial for the murder of Chink Elders; and, similarly the confession would not be admissible in the second stage of a capital murder trial as evidence of an aggravating circumstance. *Id.* We found this error to be constitutional, but harmless beyond a reasonable doubt. *Id.*, 2000 OK CR 25, ¶ 59, 17 P.3d 1021.

In this case, Appellant admits the above ruling applies "with equal force in the present case." He submits the issue to be determined here is whether the constitutional violation is harmless in the context of this case.

As in *Myers I*, this confession was utilized by the State to prove the continuing threat aggravating circumstance. Besides this evidence, the State presented evidence that Myers had been convicted of a prior assault with intent to rape, had been previously convicted of murdering Cindy Marzano, and had been in possession of a firearm after a felony conviction. Even without this confession, there was sufficient evidence to support the continuing threat aggravating circumstance. In light of the overwhelming evidence in support of this aggravating circumstance, we find the introduction of the confession was harmless beyond a reasonable doubt, because when viewed in light of all the evidence presented in aggravation, there is no reasonable probability the error contributed to the imposition of the death penalty. *See Bryson v. State*, 1994 OK CR 32, ¶ 41, 876 P.2d 240, 256-57.

Myers II, 133 P.3d at 333 (footnote omitted). Myers contends that the OCCA did not properly apply the Chapman standard. It is not disputed that Chapman sets forth the clearly established standard for evaluating instances of constitutional error. Pickens v. Gibson, 206 F.3d 988, 996 (10th Cir. 2000). Further, the OCCA correctly articulated the Chapman standard as requiring a determination that the error was "harmless beyond a reasonable doubt." See Chapman, 386 U.S. at 24. Respondent contends that Myers is not entitled to relief on this claim because the OCCA's determination was not an unreasonable application of Supreme Court law.

This Court agrees that admission of Sheriff Sharp's testimony concerning Myers' immunized confession of the Enders murder was error. As discussed above, this Court applies the Brecht standard to evaluate the harmlessness of an error. For the reasons that follow, this Court concludes that any error in allowing the admission of Sheriff Sharp's second stage testimony was harmless under Brecht.

As the OCCA noted, there was considerable other evidence, apart from Sheriff Sharp's testimony, to support the continuing threat aggravating circumstance. Further, the jury found the

existence of three other aggravating circumstances before recommending a death sentence for Myers. During the second stage, the State presented Bonnie Makin Hames and Stacy Fain who testified about prior sexual attacks on them by Myers (Tr. Trans. Vol. X at 2822-35, 2958-72). The State also introduced evidence of Myers' conviction for the rape and murder of a second victim, Cindy Marzano, and evidence that Myers had a gun in his possession. This evidence was sufficient to support the jury's finding of the continuing threat aggravator. Accordingly, the Court finds that Sheriff Sharp's testimony did not substantially influence the jury's decision to find the continuing threat aggravator or to recommend a sentence of death for Myers. The Court does not have grave doubts as to the harmlessness of the error. Habeas relief shall be denied on Myers' sixteenth ground for relief.

## XV. Improper admission of unadjudicated acts (ground 17)

In his seventeenth ground for relief, Myers argues that the trial court violated his constitutional rights when it allowed evidence of unadjudicated acts to support the prosecution's claim that Myers was a continuing threat to society. The bulk of his argument focuses again on Officer Sharp's testimony about Myers' involvement in the Enders homicide.

In Oklahoma, to demonstrate a "continuing threat" to society, the state must show a probability that a defendant would commit future criminal acts of violence. Medlock v. State, 887 P. 2d 1333, 1346 n.30 (Okla. Crim. App. 1994). The "continuing threat" aggravator may be proved by prior convictions, unadjudicated crimes, or circumstances of the crime for which defendant is on trial. Rogers v. State, 890 P. 2d 959, 976-77 (Okla. Crim App. 1995); Mitchell v. State, 884 P.2d 1186, 1208 (Okla. Crim. App. 1994). Further, the Supreme Court has found that unadjudicated crimes or a past history of lawlessness may be used to prove a defendant is a continuing threat to

society. See Jurek v. Texas, 428 U.S. 262, 276 (1976) ("What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."); see also Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002) ("The Constitution . . . does not preclude a capital sentencer from considering unadjudicated bad acts.").

To the extent Myers argues that the trial court's ruling allowing Sharp's testimony was a violation of his due process rights because it fatally infected his trial, his claim must fail. As noted in the discussion covering ground sixteen, there was substantial evidence supporting the continuing threat aggravator even without consideration of Officer Sharp's testimony. Although error, the admission of his testimony did not result in a fundamentally unfair trial. Habeas corpus relief shall be denied on Myers' ground seventeen claim.

## XVI. Prosecutorial misconduct (ground 18)

Myers' eighteenth ground arises out of the following remarks made by the prosecution at the end of first stage closing arguments:

> And when we were at the -- at jury selection, I remember you were asked on several occasions that, as the defendant sits there at that time, that he has to be considered innocent and all of you or many of you agreed with that.
>
> Ladies and Gentlemen, I submit to you that at this time, after all of this evidence has come in, the consistent, supportive evidence supporting each other, that that veil of innocence has been removed from Karl Myers, that he sits there now as a guilty man, guilty of the murder of Shawn Marie Williams. And I ask that you return a verdict of guilt in this case.

Tr. Trans. Vol. IX at 2646. Citing Caldwell v. Mississippi, 472 U.S. 320 (1985), and Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990), Myers argues that the prosecutor's comment that "the veil of innocence has been removed" violated his constitutional right to the presumption of innocence. Raised as part of Proposition IX on direct appeal, the OCCA denied relief on this claim

finding the error was harmless beyond a reasonable doubt. <u>Myers II</u>, 133 P.3d at 329 (citing <u>Chapman</u>, 386 U.S. at 24). Respondent submits that Petitioner has failed to show that the OCCA's decision was contrary to, or an unreasonable application of clearly established federal law.

The Supreme Court has established rules that govern a petitioner's prosecutorial misconduct claims. "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Le v. Mullin</u>, 311 F. 3d 1002, 1013 (l0th Cir. 2002) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). To determine whether a trial is rendered fundamentally unfair, the court examines the entire proceeding, "including the strength of the evidence against the petitioner . . . as well as [a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks." <u>Bland v. Sirmons</u>, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). "'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" <u>Id.</u> (alteration in original) (quoting <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." <u>Id.</u>

When a prosecutor's comment or argument deprives a petitioner of a specific constitutional right, "a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." <u>Mahorney</u>, 917 F.2d at 472 (citing <u>Donnelly</u>, 416 U.S. at 643). However, not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. <u>See</u> <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 338 (1985) (plurality opinion).

In the case at hand, Petitioner claims that the misconduct of the prosecutor violated his specific constitutional right to the presumption of innocence.[20] The proper standard under which a specific constitutional claim should be analyzed, therefore, is whether the specific "constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." Torres v. Mullin, 317 F. 3d 1145, 1158 (10th Cir. 2003) (citing Paxton v. Ward, 199 F. 3d 1197, 1217-18 (10th Cir. 1999)).

Accordingly, this Court must determine whether the prosecutor's comment was so prejudicial that it effectively denied Petitioner his constitutional guarantee of a presumption of innocence. See Torres, 317 F. 3d at 1158; Mahorney, 917 F. 2d at 472 (concluding that petitioner's rights were effectively denied because the "essence of the error in the prosecution's comments . . . was that they conveyed to the jury the idea that the presumption had been eliminated from the case prior to deliberations"). Upon examination of the record in this case, the Court finds that the OCCA's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). The Court agrees that the prosecutor's comment that the "veil of innocence has been removed" was objectionable because it incorrectly implied that the presumption of innocence no longer existed. However, an error in permitting the prosecutor to make

---

[20]     The Supreme Court has acknowledged that certain unarticulated rights are implicit in enumerated constitutional guarantees. "For example, . . . the right to be presumed innocent . . . appear[s] nowhere in the Constitution or Bill of Rights." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 579-80 (1980). However, this unarticulated right has "nonetheless been found to share constitutional protection in common with explicit guarantees." Id. at 580. "While use of the particular phrase 'presumption of innocence' - or any other form of words - may not be constitutionally mandated, the Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'" Taylor v. Kentucky, 436 U.S. 478, 485-86 (1978) (quoting Estelle v. Williams, 425 U.S. 501, 503 (1976)).

improper comments is subject to harmless error analysis. <u>Pickens v. Gibson</u>, 206 F. 3d 988, 998 (10th Cir. 2000). Additionally, <u>Mahorney</u> requires the Court to "evaluate the prejudicial effect that the objectionable comments had on the presumption of innocence by considering the pertinent surrounding circumstances at trial." <u>Mahorney</u>, 917 F. 2d at 473. The OCCA considered the circumstances at trial and determined that the error was harmless beyond a reasonable doubt because of the "overwhelming evidence of guilt." <u>Myers II</u>, 133 P. 3d at 329.

First, the Court notes that the prosecutor's remark was an isolated comment. Further, the jury was clearly instructed that the State had the burden of proving Myers' guilt beyond a reasonable doubt. <u>See</u> Instruction No. 8, O.R. Vol. VII at 1218 ("The defendant is presumed innocent of the crime and the presumption continues unless after consideration of all the evidence you are convinced of his guilt beyond a reasonable doubt.") Jurors are presumed to follow their instructions. <u>Taylor v. Workman</u>, 554 F.3d 879, 893 (10th Cir. 2009) (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 540-41 (1993)). Finally, there was considerable evidence of Myers' guilt, including DNA evidence. In the context of the entire trial, the prosecutor's comment would have had little impact on the jury. <u>Duvall v. Reynolds</u>, 139 F.3d 768, 795 (10th Cir. 1998). The Court concludes that Petitioner has not shown how the OCCA's decision was contrary to, or an unreasonable application of, clearly established Supreme Court law. He is not entitled to habeas relief on his claim of prosecutorial misconduct.

## XVII.  Trial court's failure to ensure an impartial jury (ground 19)

Myers next complains that the trial court's rulings during voir dire denied him an impartial jury in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. First, he claims that prospective juror Danny Stewart should have been excused for cause because he admitted it would be difficult for him to consider all three possible punishments in the case. <u>See</u> Dkt. # 23 at 234.

Myers argues that he was forced to use a peremptory challenge to remove Juror Stewart. Second, because he had limited peremptory challenges, Myers was unable to remove Juror Farrell. Upon review of the merits, the OCCA rejected this claim on direct appeal. Respondent asserts that Myers has failed to establish that the OCCA's determination was contrary to, or an unreasonable application of, Supreme Court law, or that it was an unreasonable determination of the facts.

On direct appeal, Myers argued that he was forced to use a peremptory challenge to remove an unqualified juror (Juror Stewart) because the trial judge would not excuse him. See Proposition XI in Myers' Brief of Appellant filed in OCCA Case No. F-98-646. Considering Myers' allegations relating to prospective Juror Stewart, the OCCA found:

> When this Court reviews the *voir dire* of potential jurors whose answers are unclear and who appear equivocal in their ability to consider all punishment options, we traditionally defer to the impressions of the trial court who can better assess whether a potential juror would be able to fulfill his or her oath. *Douglas v. State*, 1997 OK CR 79, ¶ 7, 951 P.2d 651, 659. The prospective juror said he would try to give fair consideration to all sentencing options, including a life sentence, and his admitted propensity to favor a sentence greater than life does not show he could not fairly consider the option. *Gilbert v. State*, 1997 OK CR 71, ¶¶ 27-29, 951 P.2d 98, 108-109. While we believe the question here is close, we cannot find the record shows the trial court abused its discretion by denying the motion to remove juror "S" [Stewart] for cause.

Myers II, 133 P.3d at 321.

In support of his claim that it was necessary to use a peremptory challenge to remove prospective Juror Stewart from the jury panel, Myers points to several responses given by Stewart in which Stewart indicated he might have trouble considering a life sentence in second stage proceedings for someone found guilty of murder. Stewart was questioned extensively by the trial judge, the prosecutor and defense counsel. Myers' counsel asked the court to remove him for cause several times, and the trial judge denied each request. Myers ultimately used a peremptory challenge

to excuse Stewart.  Tr. Trans. Vol. III at 642. At the conclusion of voir dire, Myers' trial counsel again renewed his objection to the court's refusal to excuse Stewart for cause, stating that if they had the additional peremptory challenge (the one used to excuse Stewart) the defense would have used it to excuse Juror Ferrell. Tr. Trans. Vol. IV at 1065. No explanation is given regarding concerns about Juror Ferrell.  More importantly, Myers fails to explain to this Court how the inclusion of Juror Ferrell resulted in an impartial jury.

Under the Sixth Amendment to the Constitution, a defendant has a right to trial by an impartial jury. "One touchstone of a fair trial is an impartial trier of fact - 'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). The proper standard for determining when a prospective juror should be excused for cause is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38 (1980)). On direct appeal, the OCCA rejected Myers' claim, citing two Oklahoma cases, which in turn reiterated the standard set forth in Wainwright.

Any claim that Myers' jury was not impartial must focus on the jurors who ultimately sat, and not the juror who was excused through a peremptory challenge because the judge would not excuse him. Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988); see also United States v. Martinez-Salazar, 528 U.S. 304, 305 (2000) (citing Ross and noting that "[s]o long as the jury that sits is impartial, . . . , the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated").

While prospective Juror Stewart seemed to equivocate on whether he could consider a life sentence (with the possibility of parole) for a murderer, he also specifically stated that he would consider all three sentencing options. Thus, the trial court did not violate Myers' constitutional rights in denying defense counsel's motion to excuse Mr. Stewart for cause. See Sallahdin v. Gibson, 275 F.3d 1211, 1223 (10th Cir. 2002). More importantly, nothing in the record or in the pleadings supports a necessary component to establish a constitutional violation - that Juror Farrell, the one who remained to sit on the jury, was not impartial. The Court agrees with the OCCA that no violation of Myers' right to an impartial jury occurred at his trial. Habeas relief should be denied on this issue.

## XVIII. Improper jury instructions (ground 20)

In his twentieth ground for habeas relief, Myers challenges the OCCA's ruling on his objection to the following instruction given to the jurors at the conclusion of the first stage of his trial:

> INSTRUCTION NUMBER 2: It is your responsibility as jurors to determine the facts from the evidence, to follow the rules of law as stated in these instructions, to reach a fair and impartial verdict of guilty or not guilty based upon the evidence, and to determine punishment if you should find the defendant guilty as you have sworn you would do. You must not use any method of chance in arriving at a verdict, but must base your verdict on the judgment of each juror.

O.R. Vol. VII at 1289. Myers contends that the phrase in the instruction "to determine punishment if you should find the defendant guilty as you have sworn to do" improperly suggests that part of the jury's sworn duty was to find him guilty. Dkt. # 23 at 240. Myers presented this claim to the OCCA on direct appeal and denied relief on the merits, finding:

Here, the jury was properly instructed in Jury Instruction No. 11 that the issue of punishment was not before them at this time. In addition, the first stage instructions, as a whole, did not address the issue of punishment. Further, even utilizing the "reasonable likelihood" standard set forth in *Boyde*,[21] we find the jury was properly instructed on the elements of the crime and the State's burden of proof in the first stage of trial, and the instructions taken as a whole were not confusing or ambiguous.

Myers II, 133 P.3d at 330. Although the OCCA found no error,[22] it prospectively modified the instruction to clear up any possible ambiguity. Id. Respondent argues that Myers has failed to demonstrate that the OCCA's adjudication of the claim was an unreasonable application of Supreme Court law.

The Court agrees with the OCCA that any ambiguity attributable to the challenged phrase in Instruction No. 2 is rectified by other language in Instruction No. 2 specifically directing the jurors to reach a fair and impartial verdict of guilty or not guilty based upon the evidence. Further, the instruction given to the jury as Instruction No. 11, specifically stated "[t]he issue of punishment is not before you at this time." O.R. Vol. VII at 1299. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeill, 541 U.S. 433, 427 (2004). Further, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Boyde, 494 U.S. at 378 (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). Relying on the standards set forth in Boyde, the OCCA evaluated the instructions as a whole and concluded that, taken together, the instructions

---

[21]    The OCCA referred to Boyde v. California, 494 U.S. 370 (1990), because Myers cited Boyde as support for his due process claim based on the instruction.

[22]    Myers incorrectly states that the OCCA "found error but denied relief." Dkt. # 23 at 240. In deciding that the instruction should be modified prospectively, the OCCA stated, "However, even though we find no plain error, we are convinced by Myers's argument that the uniform jury instruction, OUJI-CR 2d. 10-2, requires some modification." Myers II, 133 P.3d at 330.

were not confusing or ambiguous. <u>Myers II</u>, 133 P.3d at 330. Based upon a careful review of the entire set of first stage instructions, this Court agrees that Myers' constitutional rights were not violated because the jury was given Instruction No. 2. Accordingly, Myers is not entitled to habeas relief on his ground twenty claim.

## XIX. Vague and overbroad aggravating circumstances (ground 21)

Myers asserts in his twenty-first claim that the "continuing threat" and "avoid arrest" aggravating circumstances are unconstitutional, in violation of the Eighth and Fourteenth Amendments.

### A. Continuing threat aggravator

As noted by Respondent and recognized by Myers (Dkt. # 23 at 246), the Tenth Circuit has repeatedly rejected constitutional challenges to Oklahoma's continuing threat aggravator. Myers urges this Court to find the aggravator unconstitutional in hopes that the Tenth Circuit would repudiate its prior rulings. Nothing in his argument, however, persuades this Court that the precedent should be changed. Tenth Circuit precedent forecloses Myers' facial challenge to Oklahoma's continuing threat aggravator as unconstitutional. <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1232 (10th Cir. 2002); <u>see</u> <u>also</u> <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000). The claim is without merit. The OCCA's denial of relief was not an unreasonable application of Supreme Court law. Habeas relief shall be denied on this portion of ground twenty-one.

### B. Avoid arrest aggravator

Likewise, Myers urges the Court to find that Oklahoma's avoid arrest aggravating circumstance fails to narrow the class of offenders eligible for the death penalty, and is unconstitutional. Dkt. # 23 at 251. He argues that the aggravator is overly broad and creates a presumption of guilt which places a burden on the defendant to prove his innocence. The OCCA rejected this claim on direct appeal finding:

> Myers also argues the "murder to avoid arrest or prosecution" aggravator is unconstitutionally overbroad, "taking in a huge portion of persons convicted of first degree murder." We have previously held the application of this aggravator is sufficiently limited by the requirements that (a) a predicate crime existed, apart from the murder, from which the defendant sought to avoid arrest/prosecution, and (b) the State presented evidence that established the defendant's intent to kill to avoid arrest or prosecution. Proposition Seventeen does not require relief.

Myers II, 133 P.3d at 334 (citations to state cases omitted). The OCCA has consistently found the avoid arrest aggravator does not create a risk of arbitrary and capricious imposition of the death penalty. See, e.g., Harjo v. State, 882 P.2d 1067 (Okla. Crim. App. 1994); Romano v. State, 847 P.2d 368 (Okla. Crim. App. 1991); Fowler v. State, 779 P.2d 580 (Okla. Crim. App. 1989). Instructing the jury according to the statutory language of the aggravator, as Myers' trial judge did, meets constitutional standards. See, e.g., Boyd v. Ward, 179 F.3d 904, 922-23 (10th Cir. 1999). Thus, the OCCA's determination was not unreasonable. Myers is not entitled to habeas relief on this portion of his ground twenty-one claim.

## XX. Improper jury instruction regarding mitigating circumstance (ground 22)

In ground twenty-two, Myers argues that his Eighth and Fourteenth Amendment rights were denied because the trial judge refused to provide a second stage jury instruction that evidence Myers posed no threat to others when incarcerated constituted a mitigating factor. On direct appeal, the OCCA summarized Myers' position and found as follows:

During the second stage of trial, Layne Davison, Myers's case manager at the Oklahoma State Penitentiary (OSP), testified concerning his behavior while in prison. He evaluated Myers's behavior as good; he had no trouble with other inmates and had no disciplinary problems. Defense counsel requested the following instruction relating to the "continuing threat" aggravator: "Karl Lee Myers functions well in the secure environment of prison, has not misbehaved, gives no trouble to other inmates or staff, and would not be a continuing threat to others in a prison setting." The State objected to the last clause of the requested instruction, beginning with the word "staff" on the ground that the objectionable language "would invade the province of the jury to make a conclusion whether or not that evidence presented would amount to-that he is not a continuing threat to society." Defense counsel did not object to omitting the language.

. . .

The trial judge modified the instruction to the extent that it was not supported by the evidence. In addition, the jury was also instructed that it "may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well." Myers was not prevented from presenting mitigating evidence to the jury and the jury was instructed it could decide other mitigating circumstances existed. *See Ochoa v. State*, 1998 OK CR 41, ¶ 71, 963 P.2d 583, 605. No plain error occurred.

Myers II, 133 P.3d at 332-33. Our standard for determining whether jury instructions violate the Constitution is "whether there is a reasonable likelihood the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Duvall, 139 F.3d at 791 (quoting Boyde, 494 U.S. at 380). The trial court included the following for consideration by the jury as a mitigating circumstance: Karl Lee Myers functions well in the secure environment of prison, has not misbehaved, gives no trouble to other inmates. See Instruction No. 38, O.R. Vol. VII at 1337. As correctly noted by the OCCA, the trial court also instructed the jury that, "In addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well." Id. Myers has failed to demonstrate that there is a reasonable likelihood the jury was prevented from consideration of constitutionally relevant evidence. He has not shown that the OCCA's adjudication was an unreasonable determination of the facts or an

unreasonable application of Supreme Court law. His due process rights were not violated by the trial court's revised instruction. Accordingly, habeas corpus relief is not available on Myers' ground twenty-two claim.

## XXI.    Cumulative effect of errors (ground 23)

Myers next contends he was denied a fair trial and a reliable sentencing process because of the impact of the accumulation of errors (Dkt. # 23 at 230-235). Petitioner exhausted this claim by asserting cumulative error on direct appeal. The OCCA denied relief finding the irregularities at Myers' trial were not so great, even taken together, as to have denied Myers a fundamentally fair trial. Myers II, 133 P.3d at 336.

Cumulative error analysis "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hamilton v. Mullin, 436 F.3d 1181, 1196 (10th Cir. 2006) (internal quotations omitted) (citing Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)). In Myers' case, the OCCA did engage in cumulative error analysis and determined the aggregate of individual errors did not deny him a fundamentally fair trial.

This Court has reviewed the following trial errors together insofar as they concern federal constitutional issues: (1) ground thirteen - restriction on Maybee testimony concerning Myers' alleged speech impediment; (2) ground eighteen - prosecution's argument concerning "veil of innocence"; and (3) ground sixteen - testimony of Sheriff Charles Sharp regarding Myers' confession to  Enders murder). The errors, however, were harmless or non-prejudicial. The Court cannot find under the facts of this case that the cumulative effect of the errors deprived Myers of a

fair trial. See Newsted v. Gibson, 158 F.3d 1085 (10th Cir. 1998); Moore v. Reynolds, 153 F.3d 1086 (10th Cir. 1998); United States v. McKneely. 69 F.3d 1067, 1080 (10th Cir. 1995). Having rejected each of Myers' habeas claims, and determined that his rights were not substantially affected by the cumulative effect of any errors, the Court finds Myers has shown no cumulative error warranting a new trial.

## XXII.  Request for discovery and evidentiary hearing

In his request for relief (Dkt. # 23 at 240), Myers asks for an evidentiary hearing "particularly as to the issues of Mr. Myers' mental retardation, and the ineffective assistance of his trial and appellate counsel for both the criminal prosecution and the mental retardation proceedings." Id. He also requests a hearing "on any other issues, substantive or procedural, which involve facts not apparent from the existing record and on an issues which involve facts disputed by the State." Finally, as to any procedural default issues, he asks for a hearing "to show the inadequacies of Respondent's procedural defenses or that cause and prejudice overcomes them."

As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently before the Court, this Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. Williams v. Taylor, 529 U.S. 420 (2000). Accordingly, Petitioner's request for discovery and for an evidentiary hearing is denied.

## XXIII. Certificate of  Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes." Brecheen v. Reynolds. 41 F.3d 1343, 1370 (10th Cir. 1994). To be granted a certificate of appealability, however, Myers must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists of reason or that the questions deserve further proceedings. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Myers' propositions of error, and found none of the claims merited or warranted habeas relief. However, the Court recognizes that some of Myers' stated issues relate to the alleged deprivation of one of his constitutional rights, which, if substantiated, could entitle him to habeas relief. In order to ensure that these issues receive the type of review on appeal which should be accorded such serious matters, the Court has carefully considered each issue and finds that the following enumerated issues could be debated among jurists or could be resolved differently by another court:

> Ground 13 subpart A - restrictions on testimony regarding Myers' alleged speech impediment;
> Ground 14 subpart B - restrictions on cross-examination of DNA experts;
> Ground 15 - admission of Sharp's testimony regarding Myers' confession to Enders murder; and
> Ground 18 - prosecutor's remark regarding "veil of innocence."

Additionally, this Court finds that these same issues are adequate to deserve encouragement to proceed further. See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot, 463 U.S. at 893).

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.      Randall G. Workman is substituted for Marty Sirmons as the party Respondent, and the **Court Clerk is directed** to note such substitution on the record.

2.      The original petition for a writ of habeas corpus (Dkt. # 15) is **declared moot**.

3.      The amended petition for writ of habeas corpus (Dkt. # 23) is **denied**.

4.      A certificate of appealability is granted as to the claims enumerated hereinabove.

5.      A separate judgment shall be entered in this matter.

**DATED** this 30th day of September 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma